421 A.2d 786

COMMONWEALTH of Pennsylvania, Appellant,

v.

Donald A. SCHMOYER, Jr.

Superior Court of Pennsylvania.

Submitted Dec. 4, 1979.

Filed Aug. 22, 1980.

Michael McIntyre, Assistant District Attorney, Allentown, for Commonwealth, appellant.

Gerald Roth, Allentown, for appellee.

Before PRICE, WATKINS and HOFFMAN, JJ.

PRICE, Judge:

The Commonwealth appeals from an order of the Court of Common Pleas of Lehigh County per the Honorable David E. Mellenberg denying the Commonwealth's petition to extend the time for commencement of trial and discharging the appellee. The lower court predicated its order upon a finding that appellee's right to a speedy trial under Pa.R. Crim.P. 1100 had been violated. For the reasons stated herein, we reverse the order, reinstate the criminal charges against appellee, and remand to the court of common pleas for trial to commence within one hundred and twenty (120) days.

The relevant facts are as follows. A criminal complaint was filed against appellee on September 8, 1978, charging him with violations of The Controlled Substance, Drug, Device and Cosmetic Act[1] and conspiracy.[2] Appellee was arrested on September 11, 1978, and at a preliminary hearing held on September 21, 1978, the Commonwealth established a prima facie case on all charges. On October 23, 1978, three days prior to its scheduled date, appellee waived arraignment. The case was not listed for trial during the November, 1978 term of court in order to allow appellee thirty days in which to file an omnibus pretrial motion, pursuant to Pa.R.Crim.P. 307. No term of criminal court having been held in Lehigh County in December, 1978, the case was first listed for trial during the January, 1979 term. It was not reached during that term, however, and was relisted for trial on Wednesday, February 28, during the second week of the two–week term. At the call of the trial list on the morning of February 28, appellee's counsel informed the court administrator, Mr. Daniel Sabetti, that the case would probably be disposed of in a matter other than by

1. Act of April 14, 1972, P.L. 233, No. 64, § 13, *as amended* [35 P.S. § 780–113(a)]. Appellee was charged with possession of a controlled substance, possession with intent to deliver, and delivery.

2. 18 Pa.C.S. § 903.

trial, since the parties were engaged in plea negotiations.[3] This caused Mr. Sabetti to remove the case from the normal course of order for trial.[4] Consequently, the case was not tried during the February trial term, which ended two days later on Friday, March 2.

Under the precept of Rule 1100,[5] trial had to commence by March 7, 1979, barring any exclusions of time under section (d)[6] of the Rule or any extensions of the commencement date granted under section (c) of the Rule. On March 7, the Commonwealth filed a petition to extend alleging, in effect, that despite its due diligence, the time consumed in attempting to finalize a plea agreement prevented trial from commencing during the February trial term and within the Rule 1100 period. Appellee filed a petition to dismiss pursuant to Rule 1100(f)[7] on March 8, alleging that 180 days had passed

**3.** The record indicates that appellee's counsel made this same representation to Mr. Sabetti when the case was first called during the January trial term, as plea bargaining was then underway.

**4.** At the hearing on the Commonwealth's petition to extend the time for commencement of trial, Mr. Sabetti testified that when counsel indicates at the call of the daily trial list that plea negotiations are in progress, the case is not attached for trial but instead is removed from the normal course of order for trial and placed on a "miscellaneous" list, consisting of those cases that are likely to result in guilty pleas, to be nol prossed, or are considered appropriate for Accelerated Rehabilitative Disposition.

**5.** Pa.R.Crim.P. 1100(a)(2) provides that "[t]rial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed."

**6.** Section (d) of the Rule provides:
"In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:
(1) the unavailability of the defendant or his attorney;
(2) any continuance in excess of thirty (30) days granted at the request of the defendant or his attorney, provided that only the period beyond the thirtieth (30th) day shall be so excluded;"

**7.** Rule 1100(f) provides:
"At any time before trial, the defendant or his attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this Rule has been violated. A copy of such application shall be served upon the attorney for the Com-

since the filing of the complaint and that as a result, he should be discharged. A hearing on both petitions was held before Judge Mellenberg, and he issued an order on March 28, 1979, granting appellee's petition to dismiss and denying the Commonwealth's petition to extend on the ground that the prosecution failed to exercise due diligence to commence appellee's trial within 180 days. It is from this order that the Commonwealth appeals.

▇ Section (c) of Rule 1100 provides:

"At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. A copy of such application shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon. Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth. Any order granting such application shall specify the date or period within which trial shall be commenced."

We note, initially, that the Commonwealth's petition seeking an extension was timely, as it was filed "prior to the expiration of the period for commencement of trial." *See Commonwealth v. Shelton*, 469 Pa. 8, 364 A.2d 694 (1976); *Commonwealth v. O'Shea*, 465 Pa. 491, 350 A.2d 872 (1976). Furthermore, we are mindful that the burden is upon the Commonwealth to make a record showing of due diligence. *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976); *Commonwealth v. Warman*, 260 Pa.Super. 130, 393 A.2d 1046 (1978). Mere assertions of due diligence and unproven facts do not establish cause for an extension under Rule 1100(c). *Commonwealth v. Ehredt*, 485 Pa. 191, 401 A.2d 358 (1979); *Commonwealth v. Antonuccio*, 257 Pa.Super. 535, 390 A.2d 1366 (1978).

monwealth, who shall also have the right to be heard thereon. Any order granting such application shall dismiss the charges with prejudice and discharge the defendant."

The thrust of the Commonwealth's petition to extend was that appellee had not been tried during the February term of court because defense counsel and the assistant district attorney were engaged in plea negotiations that had not been finalized prior to the end of the trial term. The petition further alleged that as a consequence of the failure to finalize the plea bargain, the Commonwealth, despite its due diligence, would be unable to commence appellee's trial within the time period mandated by Rule 1100. At the hearing on the petition, the assistant district attorney outlined the substance of the plea agreement. In exchange for appellee's guilty plea, a law enforcement officer, an Agent Licklider, was to appear before the sentencing court and make favorable comments and recommendations on appellee's behalf.[8] However, the following difficulties arose with this arrangement:

"MR. OBERHOLTZER: [Assistant District Attorney]

Now, Agent Licklider came to me that week, late that week. I was in contact with Mr. Roth, [defense counsel] I believe, several times concerning this case . . . .

The problem we had was arriving at something that Agent Licklider could say which would be consistent with the situation. We did not want to mislead the Court or mislead Attorney Roth or his client by Agent Licklider coming in here and blandly making a misstatement of fact as to a quasi recommendation on the defendant's good character in these regards because we had a charge we knew that was going to be served upon the defendant and was in fact just served, a new charge, and there was several discussions with Agent Licklider and Attorney Roth, which Agent Licklider will testify to as to the exact wording, how far he would go, and what he would say. And that's what was holding up the plea negotiations." (N.T. 6–7).

8. The record does not disclose why the prosecution was in a position to comment favorably on appellee's behalf. The Commonwealth's brief, however, points out that appellee had been an informant. Presumably, his past cooperation with law enforcement authorities served as the basis for the plea agreement.

The Commonwealth, therefore, was confronted with trying to preserve the plea bargain tentatively agreed upon while at the same time trying not to compromise its position with respect to the subsequent charge against appellee. Manifestly, Agent Licklider could not appear in sentencing court with knowledge of the new charge and make false representations concerning appellee's good character. Nor could the Commonwealth afford to have the agent reveal the fact that appellee was about to be served with a new criminal complaint. If appellee had learned of the new charge, he could have threatened to withdraw from the existing plea bargain in order to force the Commonwealth to drop the charge. Nevertheless, unless something favorable was tendered by the Commonwealth on appellee's behalf at the sentencing, the plea bargain would evaporate. Furthermore, the record discloses that after the case had been removed from the trial list and the problems with the plea agreement surfaced, the parties were unable to meet for any length of time during the remainder of the trial term in order to resolve them. The assistant district attorney assigned to the instant case was also handling the next case on the trial list, which was called to fill the gap created when the instant case was removed from the scheduled order. He therefore was forced to spend the remaining two days of the term involved in trial.[9]

We have had few occasions to consider the role of plea bargaining in the Rule 1100 computation. In *Commonwealth v. Rodgers*, 254 Pa.Super. 288, 385 A.2d 1023 (1978), the defendant initiated plea negotiations on the last possible date for jury selection prior to the expiration of the Rule 1100 run date. When he appeared in court for jury selection, the court was informed of the plea agreement, but refused to accept the agreement and directed that the case

9. Trial in this second case ended on Friday, March 2, 1979, the final day of the term. Furthermore, the jury panel for the February term was discharged on Thursday, March 1. (N.T. 25). Hence, even if the Commonwealth had decided to try appellee after completion of the other trial instead of cooperating in trying to obtain a final plea agreement, there was no longer a panel available from which to select jurors.

be deleted from the trial list to allow the court time to conduct its own investigation of the circumstances of the case and of the defendant's criminal record. While the court was considering the case, the Rule 1100 period expired. The defendant filed a petition to dismiss, which was denied, and he was subsequently tried and convicted on all charges. Finding his Rule 1100 claim meritorious on appeal, we expressly rejected the Commonwealth's argument that the defendant's initiation of plea negotiations constituted a request for a continuance under Rule 1100(d)(2). Furthermore, we stated that it was incumbent upon the prosecution to seek an extension under section (c) of the Rule for the delay caused by the court in rejecting the plea bargain and in removing the case from the trial schedule. Similarly, in *Commonwealth v. Cox*, 276 Pa.Super. 29, 419 A.2d 78 (1980), we concluded that the actions of a court of common pleas in taking a defendant's guilty plea under advisement and in ordering a presentence report did not constitute sufficient commitment of the court's time and resources to establish the "commencement of trial" for Rule 1100 purposes. In such circumstances, it is the Commonwealth's burden to avoid dismissal because of the judicial delay by timely filing a petition for extension.

■ It is well recognized that the guilty plea and the frequently concomitant plea bargain are valuable implements in our criminal justice system. *See Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *Commonwealth v. Alvarado*, 442 Pa. 516, 276 A.2d 526 (1971); *Commonwealth v. McKee*, 226 Pa.Super. 196, 313 A.2d 287 (1973). "The disposition of criminal charges by agreement between the prosecutor and the accused, . . . is an essential component of the administration of justice. *Properly administered, it is to be encouraged." Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) (emphasis added). In this Commonwealth, the practice of plea bargaining is generally regarded favorably, *Commonwealth v. Zuber*, 466 Pa. 453, 353 A.2d 441 (1976);

*Commonwealth v. Alvarado, supra; Commonwealth ex rel. Kerekes v. Maroney,* 423 Pa. 337, 223 A.2d 699 (1966), and is legitimized and governed by court rule. Pa.R.Crim.P. 319(b). The desirability of disposing of criminal charges through plea bargaining is based on the premise that frequently a plea agreement is advantageous to all concerned:

"The defendant avoids extended pretrial incarceration and the anxieties and uncertainties of a trial; he gains a speedy disposition of his case, the chance to acknowledge his guilt, and a prompt start in realizing whatever potential there may be for rehabilitation. Judges and prosecutors conserve vital and scarce resources. The public is protected from the risks posed by those charged with criminal offenses who are at large on bail while awaiting completion of criminal proceedings." *Blackledge v. Allison, supra* at 71, 97 S.Ct. at 1627–28.

With these considerations in mind, we now hold that the finalization of a plea agreement *may* provide the basis for granting a petition for extension, provided that the Commonwealth makes a record showing of due diligence.

■ We conclude, furthermore, that the record in the instant case sufficiently establishes that the Commonwealth acted with due diligence in bringing appellee to trial. Once the complaint had been filed, the Commonwealth proceeded with dispatch. The case was first scheduled for trial in January, 1979, the earliest date consistent with the thirty–day period afforded appellee for pretrial motions and with the schedule of court terms. When the case was not reached in January, it was rescheduled for trial during the February term, still within the mandatory time period prescribed by Rule 1100. It is evident from the record that appellee's trial would have commenced on Wednesday, February 28, but for the fact that the case was taken off the trial list when defense counsel informed the court administrator that the case would be disposed of otherwise. Both the Commonwealth and defense counsel were ready and able to proceed

at that time.[10]  Had there been no plea negotiations in progress nor any representation of such bargaining made to the court administrator, it is abundantly clear that appellee's trial would have commenced on the date for which it was scheduled.[11]  Hence, we find no lack of due diligence before that point.

Moreover, we believe the prosecution acted with due diligence entitling it to an extension when it agreed to or acquiesced in appellee's "request" that the case be removed from the trial schedule to enable further negotiation to reach a final plea agreement.  In this respect, the circumstances of the instant case are analogous to those presented in *Commonwealth v. Lewis*, 247 Pa.Super. 46, 371 A.2d 1318 (1977).  In *Lewis*, the trial court granted the prosecution's petition to extend despite a considerable delay resulting from the Commonwealth's agreement to postpone pretrial proceedings to permit the defendant to undergo a polygraph examination.  In affirming the trial court's order, we stated:

"The issue thus becomes whether the Commonwealth in agreeing to the request of the appellant for the administration of the polygraph test and failing to bring the appellant to trial prior to the next Cumberland County trial term, exercised due diligence entitling it to the extension.  The prosecuting authorities made every possible effort to accommodate appellant's strategy of attempting to obtain a dismissal of the charges if the polygraph test results were favorable.  Such a course of conduct can only be characterized as a fair and just approach to the administration of criminal justice in our Commonwealth.  We refuse to hold that, under the facts of this case, the prosecuting authorities should have resisted the appellant's request for the test or should have pushed appellant's case through a preliminary hearing on

10.  Appellee's counsel testified at the hearing that he was present when the prosecution informed the administrator that it was prepared to proceed to trial.  (N.T. 17).

11.  This conclusion is buttressed by the fact that trial in another case scheduled *after* the instant case commenced on February 28.

April 23, 1975, or April 24, 1975, in order to meet the deadline of the then sitting grand jury. Due diligence does not require the Commonwealth to resist a reasonable request for delay or to force a defendant to go to a hearing on one day's notice." 247 Pa.Super. at 51, 371 A.2d at 1321.

Instantly, when problems with the proposed plea bargain surfaced, the Commonwealth could have forced appellee to trial on February 28. Instead, the prosecution apparently consented to the removal of the case from the trial rotation to accommodate appellee's acknowledged desire to secure an advantageous plea agreement. The record is devoid of any evidence suggesting that the Commonwealth's conduct in consenting to further negotiation was designed to circumvent Rule 1100. The subsequent trial involvement of the assistant district attorney, however, prevented finalization of the plea agreement before the end of the trial term. When it became apparent that a final agreement could not be obtained prior to the expiration of the Rule 1100 period, the Commonwealth timely filed an extension petition. In our view, the prosecution acted diligently in every respect while seeking to assist appellee in gaining a favorable disposition of his case.[12]

We conclude, therefore, that the lower court erred in denying the Commonwealth's petition for extension. Accordingly, we reverse the order, reinstate the charges against appellee, and remand to the court of common pleas

12. The lower court, in assessing the prosecution's diligence, found it significant that the Commonwealth never asked appellee or his counsel to agree to an extension or to waive his right to trial within 180 days. The court administrator testified that in cases involving plea negotiations, the defendant is typically asked to waive his Rule 1100 rights. The lower court evidently felt that in failing to seek a waiver or an extension from appellee, the Commonwealth had not done "everything reasonable within [its] power to see that the case is tried on time." *Commonwealth v. Smith*, 477 Pa. 424, 428, 383 A.2d 1280, 1282 (1978). While we have difficulty in understanding why the usual procedure was not followed in the instant case, we do not believe that the prosecution was required to seek additional time by attempting to secure a waiver of Rule 1100. Section (c) of the Rule establishes a means by which more time can be obtained, viz., by timely filing a petition for extension.

for trial to commence within one hundred and twenty (120) days.

HOFFMAN, J., files a concurring statement.

HOFFMAN, Judge, concurring:

I concur in the result of Judge PRICE's opinion, but would reason that appellee impliedly waived his Rule 1100 rights by acquiescing in the delay occasioned by the plea negotiations. *See Commonwealth v. Favors*, 273 Pa.Super. 109, 416 A.2d 1113 (1979).