664 A.2d 622

COMMONWEALTH of Pennsylvania, Appellant,

v.

**Brett Lamar SMITH, Appellee.**

Superior Court of Pennsylvania.

Submitted May 17, 1995.

Filed July 6, 1995.

Reargument Denied Sept. 13, 1995.

Kemal A. Mericli and Sandra Preuhs, Asst. Dist. Attys., Pittsburgh, for Com., appellant.

Patrick J. Thomassey, Asst. Public Defender, Monroeville, for appellee.

Before POPOVICH, HUDOCK and OLSZEWSKI, JJ.

HUDOCK, Judge:

In this appeal by the Commonwealth, the question presented is whether the sentencing court erred in concluding that the Commonwealth could not seek a mandatory sentence, after Appellee's conviction at trial, because it had previously offered to waive the mandatory sentence during unsuccessful plea negotiations.[1] Finding that the sentencing court did err, we vacate Appellee's sentence and remand for resentencing.

The facts and procedural history may be summarized as follows: By information filed January 15, 1993, Appellee was charged with one count each of possession of a controlled substance with intent to deliver, possession of a controlled substance, criminal conspiracy, and prohibited offensive weapons.[2] On May 3, 1993, Appellee entered a plea of guilty to the charges and sentencing was deferred until July 7, 1993. As part of the plea bargain, the Commonwealth agreed that it would not seek any applicable mandatory minimum sentence. At the conclusion of a hearing held on June 15, 1993, however, Appellee was permitted to withdraw his guilty plea. On September 29, 1993, pre-trial motions were heard and denied. On October 4, 1993, a jury convicted Appellee on all charges. On October 21, 1993, the Commonwealth sent notification of its intent to proceed pursuant to the mandatory sentencing provision of 18 Pa.C.S.A. section 7508(a)(3)(i). On February 1, 1994, the sentencing court refused to impose the mandatory minimum sentence. Instead, on the conviction for possession with intent to deliver, the court imposed a sentence of nine to twenty-three months incarceration. With regard to this sentence the court further stated that Appellee was "to be

1. The Commonwealth's right to appeal a court's refusal to impose a mandatory sentence is specifically provided by statute. See generally, 18 Pa.C.S.A. § 7508(d).

2. 35 P.S. §§ 780–113(a)(30) and (a)(16), and 18 Pa.C.S.A. §§ 903 and 908, respectively.

permitted alternate housing and work release or study release if [he] has employment or is enrolled in an appropriate educational institution." N.T., 2/1/94, at p. 47. For the criminal conspiracy conviction, the court imposed a consecutive, two-year probationary term. No further penalty was imposed on the remaining convictions. On February 8, 1994, the Commonwealth filed a motion to reconsider sentence. This motion was denied by order of court dated June 21, 1994.[3] This appeal followed.

■ Appellee's conviction for possession with intent to deliver 7.50 grams of cocaine subjected him to a mandatory minimum sentence of one year in prison and a fine of at least $5,000. 18 Pa.C.S.A. § 7508(a)(3)(i). Work release is not permitted. 18 Pa.C.S.A. § 7508(c). It is well-settled that it is within the sole discretion of the Commonwealth to invoke the mandatory minimum sentence. *See generally, Commonwealth v. Biddle*, 411 Pa.Super. 210, 601 A.2d 313 (1991); *Commonwealth v. Logan*, 404 Pa.Super. 100, 590 A.2d 300 (1991), alloc. den., 528 Pa. 622, 597 A.2d 1151. At sentencing, however, the court refused to impose the mandatory minimum because it believed that the Commonwealth does not enjoy unfettered discretion in choosing to proceed under the mandatory sentencing guidelines and because the Commonwealth's offer during plea negotiations to forego the mandatory sentence constituted an improper inducement to plead. The sentencing court further concluded that the subsequent invocation of the mandatory sentence "unconstitutionally infringed upon [Appellee's] right to due process by vindictively seeking imposition of the mandatory minimum sentence to punish [Appellee's] exercise of his right to a jury trial." Sentencing Court Opinion,

3. Appellee was adjudicated guilty prior to January 1, 1994, and there is no indication in the record that the court below vacated the judgment of sentence in order to afford additional time to consider the motion. Thus, under pre-amended Rule 1410 of the Pennsylvania Rules of Criminal Procedure, because the sentencing court failed to act within the thirty day appeal, the motion was denied by operation of law. *See generally*, Pa.R.Crim.P. 1410, 42 Pa.C.S.A. and accompanying Comment, and Pa.R.A.P. 1701, 42 Pa.C.S.A.

1/6/95, at pp. 3–4.[4] Because this reasoning has been rejected by the United States Supreme Court, and is inconsistent with both the views of this Court and our Supreme Court with regard to the Commonwealth's discretion to seek the mandatory minimum, as well as the proper function of the plea bargaining process, we reverse and remand for resentencing pursuant to 18 Pa.C.S.A. section 7508(a)(3)(i).

In its 1925(a) opinion, the sentencing court states:

> Although Pennsylvania courts have repeatedly interpreted the phrase "reasonable notice of the Commonwealth's intention to proceed ..." as a legislative grant of discretion to the prosecutor to determine whether to invoke a mandatory sentence, this Court maintains that these interpretations are fundamentally flawed.

Sentencing Court Opinion, 1/6/95, at p. 5.[5] The court then discusses its belief that the rationale of our Supreme Court in *Commonwealth v. Pittman*, 515 Pa. 272, 528 A.2d 138 (1987), and of this Court in *Commonwealth v. Biddle*, 411 Pa.Super. 210, 601 A.2d 313 (1991), is in error. In conclusion, the sentencing court states that, despite these two *controlling* decisions, it is its "continuing judgment that the legislature never intended to transfer discretion from judges to prosecutors in matters of sentencing." Sentencing Court Opinion, 1/6/95, at p. 10. The court then cites to its own opinion which was reversed by this Court in *Biddle*, *supra*.

Despite the sentencing court's belief that the reasoning in the above cases is flawed, as an inferior court, it was nevertheless required to follow the law as set forth therein. As noted above, these cases clearly hold that it is within the sole discretion of the Commonwealth whether to proceed under the mandatory minimum sentencing provisions. As shall be discussed more fully below, the use of the mandatory minimum

---

4. We note that, while claiming the Commonwealth's actions were constitutionally impermissible, the sentencing court's 1925(a) opinion is devoid of any due process analysis.

5. There was much confusion as to who represented Appellee on appeal. The brief ultimately filed by Appellee's counsel is no more than a wholesale adoption of the sentencing court's reasoning and argument. Thus, we address these arguments together.

sentencing provisions as a tool in the plea bargaining process is not unconstitutionally infirm.

In its opinion the sentencing court continues:

To the extent that the holdings of *Pittman* and *Biddle* are read to grant unfettered discretion to the prosecutor to invoke the terms of the mandatory sentencing provisions, it is this Court's considered conclusion that the District Attorney has abused this discretion: (1) by exceeding the proper limits of the discretionary role conferred to the prosecutor in sentencing; (2) by arbitrarily and discriminatorily applying its inter-office policies regarding the discretionary application of the mandatories; and (3) by circumventing the Court's supervisory function under Pa.R.Crim.P. 319.

Sentencing Court Opinion, 1/6/95, at p. 11. Upon careful consideration, we find each of these conclusions to be unsupported by the record or otherwise contrary to case law.

The sentencing court first concluded that the "traditional powers" of the Commonwealth, that is, its charging function, was not intended to include "the power to coerce guilty pleas by manipulating mandatory penalties. Nor did the Supreme Court [in *Pittman* ] redefine sentencing authority by shifting the discretion to proceed or not to proceed with mandatory sentences to an area to which it was never intended to apply— the plea bargaining process." Sentencing Court Opinion, 1/6/95, at p. 12. We cannot agree with the sentencing court's characterization of the Commonwealth's discretion.

With regard to the vital role of the plea bargaining process in criminal prosecutions, this Court has stated:

It is well recognized that the guilty plea and the frequently concomitant plea bargain are valuable implements in our criminal justice system. *See Blackledge v. Allison,* [431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) ]; *Commonwealth v. Alvarado,* 442 Pa. 516, 276 A.2d 526 (1971); *Commonwealth v. McKee,* 226 Pa.Super. 196, 313 A.2d 287 (1973). "The disposition of criminal charges by agreement between the prosecutor and the accused, . . . is an essential component of the administration of justice. *Properly ad-*

*ministered, it is to be encouraged. Santobello v. New York,* [404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) ] (emphasis added). In this Commonwealth, the practice of plea bargaining is generally regarded favorably, *Commonwealth v. Zuber,* 466 Pa. 453, 353 A.2d 441 (1976); *Commonwealth v. Alvarado, supra,* at 516, 276 A.2d 526; *Commonwealth ex rel. Kerekes v. Maroney,* 423 Pa. 337, 223 A.2d 699 (1966), and is legitimized and governed by court rule. Pa.R.Crim.P. 319(b).

*Commonwealth v. Schmoyer,* 280 Pa.Super. 406, 413–14, 421 A.2d 786, 789 (1980). In *Schmoyer,* this Court also noted that the desirability of disposing of criminal charges through plea bargaining is based on the premise that a plea agreement is advantageous to all concerned:

"The defendant avoids extended pretrial incarceration and the anxieties and uncertainties of a trial; he gains a speedy disposition of his case, the chance to acknowledge his guilt, and a prompt start in realizing whatever potential there may be for rehabilitation. Judges and prosecutors conserve vital and scarce resources. The public is protected from the risks posed by those charged with criminal offenses who are at large on bail while awaiting completion of criminal proceedings."

*Id.* 421 A.2d at 790 (*quoting Blackledge v. Allison,* 431 U.S. 63, 71, 97 S.Ct. 1621, 1627–28, 52 L.Ed.2d 136 (1977)).

In *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), *reh. den.,* 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511, the United States Supreme Court discussed the constitutional significance of the plea negotiation process. Hayes was indicted by a grand jury in Kentucky of uttering a forged instrument. After arraignment, Hayes, his counsel, and the Commonwealth's attorney met to discuss a possible plea agreement. The prosecutor offered to recommend a sentence of five years incarceration if Hayes would plead guilty. He also said that if Hayes did not plead guilty he would seek a grand jury indictment under Kentucky's recidivist statute. Under this statute, Hayes would be subject to a mandatory sentence of life imprisonment by reason of his

prior felony convictions. Nevertheless, Hayes decided not to plead guilty and the prosecutor obtained the indictment under the recidivist statute. A jury found Hayes to be guilty of the underlying crime and, in an independent proceeding, found him to be a recidivist. Thus, under Kentucky law, he was sentenced to life imprisonment. The Kentucky Court of Appeals rejected Hayes' constitutional objections to the enhanced sentence. The Sixth Circuit Court of Appeals reversed the judgment of the Kentucky Court of Appeals, however, on the ground that the prosecutor's conduct during the plea bargaining negotiations had violated the principles of *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), which protected defendants from the vindictive exercise of a prosecutor's discretion. Thus, the Sixth Circuit Court of Appeals ordered Hayes discharged.

In an opinion authored by Justice Stewart, the United States Supreme Court disagreed with the Sixth Circuit Court of Appeals' conclusion that the prosecutor was acting vindictively and in violation of due process of law because his charging decision was influenced by what he hoped to gain in the course of plea negotiations. In so concluding, the Court stated:

> ... [I]n the "give-and-take" of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.
>
> Plea bargaining flows from "the mutuality of advantage" to defendants and prosecutors, each with his own reasons for wanting to avoid trial. *Brady v. United States*, [397 U.S. 742, 752, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970)]. Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation. [*Id.* at 758, 90 S.Ct. at 1474]. Indeed, acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process. By hypothesis, the plea may have been induced by

promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial. See ABA Project on Standards for Criminal Justice, Pleas of Guilty § 3.1 (App.Draft 1968); Note, Plea Bargaining and the Transformation of the Criminal Process, 90 Harv.L.Rev. 564 (1977). Cf. [*Brady,* 397 U.S. at 751, 90 S.Ct. at 1470]; *North Carolina v. Alford,* [400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) ].

While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable"—and permissible—"attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Chaffin v. Stynchcombe,* [412 U.S. 17, 31, 93 S.Ct. 1977, 1985, 36 L.Ed.2d 714 (1973) ]. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

*Commonwealth v. Carter,* 318 Pa.Super. 252, 267, 464 A.2d 1327, 1335 (1983) (*quoting Bordenkircher,* 434 U.S. at 363–64, 98 S.Ct. at 668).

In *Carter, supra,* a panel of this Court was presented with a post-conviction petitioner's claim that his guilty pleas were unlawfully induced by the Commonwealth's threat to subject him to additional charges if he did not plead guilty. The *Carter* panel, after noting the purpose of the plea negotiation process and discussing *Bordenkircher* as cited above, concluded that the course of conduct engaged in by the prosecutor, "which no more than openly presented the appellant with the unpleasant alternatives of foregoing trial or facing charges on which he might be subject to prosecution, did not constitute 'unlawful inducement' nor will it be equated with 'manifest injustice' warranting the withdrawal of the guilty pleas." *Carter,* 464 A.2d at 1336 (citing *Bordenkircher, supra* ).

In *Carter* this Court concluded that the "inducement" involved was no more than the "give-and-take" of the bargaining process. The same can be said in the present case. Simply put, "[t]he Commonwealth is never under any legal obligation to plea bargain with any defendant." *Commonwealth v. Stafford,* 272 Pa.Super. 505, 509, 416 A.2d 570, 573 (1979) (plurality). The decision whether to enter into plea negotiations is a function of prosecutorial discretion and this Court will not review such decisions unless they are based upon invidious classifications such as race, religion, or national origin. *Id.* *See also Commonwealth v. Losch,* 369 Pa.Super. 192, 212, 535 A.2d 115, 125 (1987) ("[A defendant] has no right to a deal with the Commonwealth; the district attorney is ordinarily free to choose with whom he will negotiate.") Moreover, as discussed in *Bordenkircher, supra,* the promise of leniency is not an improper inducement in the bargaining process. Once the defendant withdraws from his part of the bargain, by not entering a guilty plea, it cannot be said that the Commonwealth should remain bound by its now rejected offer. As our Supreme Court has stated:

> In the event the plea offer is refused, the prosecutor is never prevented by due process principles from proceeding on the original indictment, notwithstanding the fact that he has deliberately attempted to dissuade the defendant from asserting a constitutional right.
>
> \*     \*     \*     \*     \*     \*
>
> If the Due Process Clause does not bar prosecution on the original indictment after the defendant's *refusal* of a plea bargain offer, then it cannot bar reinstatement of the original indictment after *revocation* of a plea agreement.

*Commonwealth v. Ward,* 493 Pa. 115, 128–29, 425 A.2d 401, 408 (1981) (plurality), *cert. den.,* 451 U.S. 974, 101 S.Ct. 2055, 68 L.Ed.2d 354 (emphasis in the original). *See also Pittman,* 528 A.2d at 142 ("[T]his Court has consistently upheld, against due process challenges, the authority of the prosecutor to choose between procedures and sentencing alternatives.") (citation omitted). Thus, we cannot agree with the sentencing court's conclusion that the Commonwealth has exceeded "the

proper limits of [its] discretionary role" in this instance. Sentencing Court Opinion, 1/6/95, at p. 11.

In addition, we find that the sentencing court's conclusion that the Commonwealth's policies with regard to mandatory sentencing are "applied arbitrarily and discriminatorily and constitute nothing more than coercion of the accused[,]" is unsupported by the record. Sentencing Court Opinion, 1/6/95, at p. 16. At the sentencing hearing, defense counsel called two prosecutors in order to inquire of them whether the district attorney's office ever considered the background of the individual defendant before electing to proceed under the mandatory minimum sentencing provision. Assistant District Attorney Daniel Konieczka testified that the office policy was to waive the mandatory minimum sentence if the case presented evidentiary problems for the Commonwealth or the defendant cooperated in other investigations. Mr. Konieczka further testified that he believed that evidentiary problems existed in the present case because the Commonwealth's theory was one of constructive possession of drugs found throughout the house and he feared that Appellee's brother, who had already been adjudicated delinquent, and his mother, who had had charges dropped against her, would now come forward as defense witnesses and claim ownership of the drugs.[6] Mr. Konieczka also testified that after Appellee was permitted to withdraw his guilty plea,[7] his new counsel was offered the same plea agreement, but also was informed that the Commonwealth would seek the mandatory minimum sentence if the matter went to trial. Assistant District Attorney Richard Goldberg confirmed that the policy stated by Mr. Konieczka involved pre-trial considerations and that once a defendant decided to go to trial the mandatory minimum sentence would be sought.

6. Appellee, his brother, and mother were arrested at the same time.

7. It appears that the trial court allowed Appellee to withdraw his guilty plea because it was made pre-trial and a possible conflict of interest existed because the same counsel represented Appellee, his brother, and his mother.

Given this testimony, the sentencing court reasoned as follows:

As the Court interprets this testimony, it is *not* the policy of the District Attorney's office to waive the mandatory sentence every time a case involves evidentiary concerns or a cooperative defendant. Rather, the District Attorney will waive the mandatory sentence if, and only if, a defendant "cooperates" or a defendant who might win a suppression hearing or a trial gives up his constitutional rights and pleads guilty—but *not* if he seeks to exercise those constitutional rights.

If [Appellee] had cooperated fully and truthfully and had provided credible evidence against others, but prior to trial had decided to "roll the dice" rather than plead guilty, could we expect the Commonwealth to ignore [Appellee's] cooperation and seek the mandatory sentence? Following the District Attorney's stated "office policies" the answer must be "yes," clearly punishing the exercise of constitutional rights.

Despite the District Attorney's admission that multiple "evidentiary problems" existed in this case, once [Appellee] chose to go to trial and suffered a conviction rather than simply pleading guilty, the prosecution conveniently ignored its own guidelines which direct that the mandatory sentence be waived. Thus, in every case where a suppression motion is denied and a defendant is convicted, regardless of the District Attorney's pre-trial determination that evidentiary deficiencies rendered a conviction improbable or even questionable, the bright light of success blinds the prosecutor's vision of the seemingly insurmountable obstacles that were once present in his case.

It is therefore inescapable that *every* time the District Attorney succeeds with weak evidence, he or she is free to, and does, ignore that the case was once fraught with deficiencies, which admittedly required a plea negotiation waiving a mandatory sentence. Claiming "evidentiary considerations" or "problems," in these instances, is simply a ruse for coercion. "Evidentiary considerations" or "prob-

lems" are true obstacles to a successful prosecution when, and only when, a defendant pleads guilty. When a defendant chooses to exercise his constitutional right to a suppression hearing or trial and the District Attorney succeeds, these "problems" magically vanish—vaporized by the successful decision or verdict. Thus, the defendant is punished for exercising his constitutional rights of suppression and trial since waiver of the mandatory penalty is *never* available to one who elects this course.

Sentencing Court Opinion, 1/6/95, at pp. 17–19 (emphasis in the original).

■ We cannot agree with this interpretation of the Commonwealth's testimony and will not speculate as to circumstances which are not properly presented in this case. Upon our own reading of the sentencing transcript, we conclude that the Commonwealth's stated policy was to enter into plea negotiations in drug cases where the defendant had been cooperative as to other investigations or where the Commonwealth believed that, due to evidentiary concerns, its chance of conviction was not strong. This policy is not constitutionally infirm. Indeed, as noted above, our criminal system allows for the "give-and-take" of plea negotiation, and the fact that the more lenient sentence is offered as an incentive to plead is not violative of a defendant's due process rights. The Commonwealth also testified that once put to the burden of going to trial, they would seek, as is permitted—and in fact intended—for all drug defendants, mandatory sentencing under the pertinent provision of the statute. As the policy noted by the Commonwealth does not infringe upon any "invidious classification," *Stafford, supra,* at 272 Pa.Super. 510, 416 A.2d 573, the trial court's conclusions that the policy is arbitrarily and discriminatorily applied is unfounded. Finally, as noted above, defense counsel inquired of the Commonwealth if it ever considered the individual circumstances of the defendant, that is, did the Commonwealth ever decide that a particular defendant "deserves a break" due to his or her age, educational level, or other mitigating circumstance. N.T., 2/1/94, at p. 16. The Commonwealth responded in the negative. It is our belief that, if the Commonwealth were to do as defense

counsel suggested, clearly such a "policy" would be more suspect of arbitrary and discriminatory application.

■   With regard to prosecutorial vindictiveness, this Court has noted:

The [United States] Supreme Court cases dealing with vindictive prosecution have recognized two distinct situations in which the appearance of vindictiveness may require inquiry and judicial intervention.   The first is where a prosecutive decision is based on discriminatory grounds of race, religion, national origin or other impermissible classification.  *See e.g. Bordenkircher v. Hayes,* [434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) ].   The other situation is where the accused is treated more harshly because he successfully exercised a lawful right, *e.g.* the right to seek a new trial.  *See e.g. Blackledge v. Perry,* [417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) ];  *North Carolina v. Pearce,* [395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) ].

*       *       *       *       *       *

In subsequent cases applying *Pearce,* however, the Supreme Court has made clear that due process does not forbid enhanced sentence or charges; rather, only enhancement motivated by actual vindictiveness toward the defendant for having exercised his legal rights is forbidden.  *See United States v. Goodwin,* [457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) ] (presumption of prosecutorial vindictiveness not warranted where defendant charged with felony after refusing to plead guilty to misdemeanor charges; prosecutor's charging decision made before trial is less likely to be improperly motivated than decision made after trial); *Bordenkircher, supra* (Due Process Clause of the Fourteenth Amendment did not prohibit a prosecutor from carrying out a threat made during plea negotiations, to bring additional charges against an accused who refused to plead guilty to the offense with which he was originally charged; there is no such presumption of vindictiveness in the "give and take" of plea negotiations, so long as the accused is free to accept or reject prosecution's offer)[.]

*Commonwealth v. Rocco,* 375 Pa.Super. 330, 334–35, 336, 544 A.2d 496, 498, 499 (1988), *alloc. den.,* 522 Pa. 575, 559 A.2d 36 (1989). *See also Ward,* 425 A.2d at 409 ("Not even the appearance of retaliation arises where a defendant simply is returned to his pre-agreement status after successfully abrogating his part of the plea bargain.") When Appellee withdrew his guilty plea, his counsel was informed by the Commonwealth that it would seek the imposition of the mandatory minimum if Appellee went to trial. In essence, Appellee was returned to his pre-agreement status. Because the Commonwealth thereafter promptly notified the sentencing court of its intention to seek the mandatory minimum, the sentencing court was without power to sentence Appellee to a term of incarceration below the mandatory minimum. *See generally, Commonwealth v. Green,* 406 Pa.Super. 120, 593 A.2d 899 (1991).

■ Finally, the sentencing court claims that the district attorney's practice of bartering with the mandatory sentences pre-trial in reaching plea agreements permits circumvention of the court's supervisory function under Pa.R.Crim.P. 319. The sentencing court argues:

Since the *Biddle/Pittman* Courts have rendered the trial court powerless in determining the applicability of mandatory minimum sentences, by using the threat of these sentences to induce plea agreements, the District Attorney had successfully bypassed the Court's prerogative to determine if the agreements serve the best interest of justice. In so doing, the prosecution has perverted the plea bargaining system, preventing the court's review of whether a defendant was coerced into a bargain or fraudulently induced to give up the very valued constitutional guarantees including the right to a suppression hearing and/or a trial.

There is an affirmative duty on the part of the Court to insure that the terms of the plea agreement are openly acknowledged and evaluated. However, where the agreement is predicated upon the exercise of the District Attorney's discretion in giving "notice of intention to proceed" under the mandatory provisions, the court's ability to exer-

cise its supervisory function pursuant to Rule 319 by accepting or rejecting the plea agreement is emasculated. Since this Court cannot *sua sponte* impose a mandatory penalty, the Court lacks the authority to reject a plea agreement predicated upon the District Attorney's waiver of the mandatory sentence. Certainly, this practice is violative of the entire plea bargaining process and cannot be tolerated. Sentencing Court Opinion, 1/6/95, at p. 20.

We are not persuaded by the sentencing court's reasoning. We agree that court approval of a plea agreement is far more than a ministerial act. As noted by the sentencing court, this Court has stated: "To the extent that a proposed plea agreement goes beyond the legitimate discretionary authority vested in the prosecutor, and seeks to bind the sentencing authority vested in the judiciary, court approval of a proposed plea agreement *via* Pa.R.Crim.P. 319 involves a *substantive* exercise of judicial sentencing discretion, as well as an act of *procedural* guardianship." *Commonwealth v. Porreca*, 389 Pa.Super. 553, 568, 567 A.2d 1044, 1051 (1989), *rev'd on other grounds*, 528 Pa. 46, 595 A.2d 23 (1991) (emphasis in original).[8] In *Porreca*, this Court found that an assistant deputy attorney general had no authority to bargain away the trial court's sentencing authority. Such is not the case in the instant appeal. Rather, the Legislature has established a minimum sentence which must be imposed unless the Commonwealth decides not to proceed under the statute. Thus, the following language of *Porreca* is more apropos: "If the bargain struck is limited to concessions which lay within the direct authority of the prosecutor to fulfill, court approval will not be necessary to fulfill the bargain." *Id.*, 389 Pa.Super. 570, 567 A.2d at 1052 (footnote omitted). Because appellate case law has held that the Legislature [9] intended that the Commonwealth deter-

8. In reversing this Court's decision in *Porreca,* our Supreme Court determined that the lack of inquiry into the defendant's affirmative response to a written plea colloquy question regarding existence of threats or promises made to persuade him to enter a guilty plea mandated a remand for a new guilty plea colloquy.

9. Once again, in answer to the trial court's protestations that the Legislature never intended to confer this discretion upon the prosecution, we echo footnote 9 of this Court's decision in *Commonwealth v.*

mine, in its sole discretion, whether to seek a mandatory sentence, and that that discretion can be used in a constitutionally firm manner during plea negotiations, we must conclude that the trial court erred in failing to impose the mandatory minimum.

Judgment of sentence vacated.[10] The matter is remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

*Biddle, supra,* wherein we stated that the legislature has not seen fit to amend section 7508 in light of this Court's interpretation of similar statutory language. Moreover, we cannot concur with the sentencing court's statement at sentencing which implies that our Legislature is ignorant of subsequent court interpretation of its legislation. *See* N.T., 2/1/94; at pp. 41–42 ("Oh, good Lord, Mr. Sachs, do you think any [of our legislators] ever read *Pittman?*").

**10.** Because this disposition may disturb the sentencing scheme of the court below, Appellee's judgment of sentence is vacated in its entirety. *See generally, Commonwealth v. Goldhammer,* 512 Pa. 587, 517 A.2d 1280 (1986), *cert. den.,* 480 U.S. 950, 107 S.Ct. 1613, 94 L.Ed.2d 798.