COMMONWEALTH of Pennsylvania, Appellant

v.

Lamar MEBANE, Appellee.

Superior Court of Pennsylvania.

Submitted Oct. 1, 2012.

Filed Oct. 29, 2012.

Reargument Denied Jan. 9, 2013.

Kevin F. McCarthy, Assistant District Attorney, Pittsburgh, for Commonwealth, appellant.

Fred G. Rabner, Pittsburgh, for appellee.

BEFORE: BENDER, J., DONOHUE, J., and STRASSBURGER, J.*

OPINION BY BENDER, J.

Appellant, the Commonwealth of Pennsylvania, appeals from the judgment of sentence imposed on Appellee, Lamar Mebane. The Commonwealth contends that the trial court erred in finding that Mebane was entitled to enforcement of a plea bargain that had been offered and accepted but where the prosecutor attempted to renege prior to presentation of the agreement to the court. The Commonwealth also asserts that Mebane's sentence was

---

* Retired Senior Judge assigned to the Superior Court.

illegal as it did not conform to an otherwise applicable mandatory minimum sentencing provision. After careful review, we affirm.

Police arrested Mebane following a traffic stop and the Commonwealth ultimately charged him with several drug related offenses.[1] On July 21, 2008, Appellee filed a motion to suppress the contraband found on his person, and a hearing was conducted to adjudicate the matter on February 1, 2010, before the Honorable Edward J. Borkowski in the Court of Common Pleas of Allegheny County. After the hearing, Judge Borkowski encouraged the parties to negotiate a plea agreement and a trial date was scheduled for July 8, 2010. On February 5, 2010, the court issued its Findings of Fact and Conclusions of Law (hereinafter "the Ruling") granting in part, and denying in part, the suppression motion. Neither party was officially served or otherwise provided with copies of the Ruling, nor was either party given notice that the court had reached a decision on the matter.

On or before March 16, 2010, the prosecutor extended a plea offer to Mebane through Mebane's attorney. The terms of the offer were that the Commonwealth would waive imposition of a mandatory sentence [2] and Mebane would serve a term of 11 1/2–23 months' incarceration. According to the agreement, Mebane would also be permitted alternative housing and/or work release. The offer was accepted by Mebane and the acceptance was communicated to the prosecutor by defense counsel. At the time of the accep-

tance, neither party was aware of the court's ruling on the suppression motion.

Defense counsel attempted to schedule a plea hearing after he communicated the acceptance to the prosecutor; however, the Minute Clerk did not schedule a new date because the trial had already been scheduled for July 8, 2010.

At some point after the plea offer had been accepted, the prosecutor asked Judge Borkowski's secretary if a ruling had been issued on the suppression motion. Overhearing the question, the court reporter who had transcribed the Ruling told the prosecutor that the Judge had issued a ruling and showed the prosecutor a copy of the transcription she had taken. The prosecutor took no action to inform defense counsel of either the existence or content of the Ruling.

When the parties appeared together on July 8, 2010, the prosecutor reneged on the plea agreement. The trial court determined that fundamental fairness entitled Mebane to the benefit of the bargain, finding that although "the prosecutor may have inadvertently obtained ..." the Ruling, he "nonetheless vulpinely used ... information regarding the Trial Court's ruling prior to its disclosure to defense counsel." Trial Court Opinion (TCO), 2/27/12, at 8–9. Hence, the court accepted Mebane's plea and sentenced him in accordance with the plea agreement.

The Commonwealth now appeals and presents the following question for our review:

Whether the trial court erred in finding that [A]ppellee was entitled to enforce-

---

1. Appellee was charged by criminal information with possession of a controlled substance (cocaine), 35 Pa.S.A. § 780–113(a)(30); possession with intent to deliver (cocaine), 35 Pa.S.A. § 780–113(a)(16); possession of drug paraphernalia, 35 Pa.S.A. § 780–113(a)(32);

driving with a suspended or revoked driver's license, 75 Pa.C.S. § 1543(a); and violation of general lighting requirements, 75 Pa.C.S. § 4303(b).

2. 18 Pa.C.S. § 7508.

ment of an offered sentencing plea agreement, in contravention of the mandatory sentencing statute, where the prosecutor had initially made an offer to waive the mandatory in exchange for appellee's plea, but the offer was withdrawn prior to presentation of the plea to the court?

Commonwealth's Brief, at 5.

It is well recognized that the guilty plea and the frequently concomitant plea bargain are valuable implements in our criminal justice system. The disposition of criminal charges by agreement between the prosecutor and the accused, ... is an essential component of the administration of justice. Properly administered, it is to be encouraged. In this Commonwealth, the practice of plea bargaining is generally regarded favorably, and is legitimized and governed by court rule.

*Commonwealth v. Parsons*, 969 A.2d 1259, 1267 (Pa.Super.2009) (*en banc*) (quoting *Commonwealth v. Schmoyer*, 280 Pa.Super. 406, 421 A.2d 786, 789 (1980)).

One of these rules, Pa.R.Crim.P. 590, reads in pertinent part:

**(A) Generally**

(1) Pleas shall be taken in open court.

(2) A defendant may plead not guilty, guilty, or, with the consent of the judge, *nolo contendere*. If the defendant refuses to plead, the judge shall enter a plea of not guilty on the defendant's behalf.

(3) The judge may refuse to accept a plea of guilty or *nolo contendere*, and shall not accept it unless the judge determines after inquiry of the defendant that the plea is voluntarily and understandingly tendered. Such inquiry shall appear on the record.

**(B) Plea Agreements**

(1) ***When counsel for both sides have arrived at a plea agreement, they shall state on the record in open court, in the presence of the defendant, the terms of the agreement,*** unless the judge orders, for good cause shown and with the consent of the defendant, counsel for the defendant, and the attorney for the Commonwealth, that specific conditions in the agreement be placed on the record in camera and the record sealed.

(2) The judge shall conduct a separate inquiry of the defendant on the record to determine whether the defendant understands and voluntarily accepts the terms of the plea agreement on which the guilty plea or plea of *nolo contendere* is based.

Pa.R.Crim.P. 590 (emphasis added).

This court has previously interpreted Pa.R.Crim.P. 590 in *Commonwealth v. McElroy*, 445 Pa.Super. 336, 665 A.2d 813 (1995), as follows:

This Rule has been interpreted by our [S]upreme [C]ourt to mean that no plea agreement exists unless and until it is presented to the court. *Commonwealth v. Porreca*, 528 Pa. 46, 595 A.2d 23 (1989 [1991] ). Our [S]upreme [C]ourt has also held that "[w]here a plea agreement has been *entered of record* and has been *accepted* by the trial court, the [Commonwealth] is required to abide by the terms of the plea agreement." *Commonwealth v. Spence*, 534 Pa. 233, 627 A.2d 1176 (1993) (rehearing denied). (Emphasis supplied). The *Spence* court further cautioned: "However, prior to the *entry* of a guilty plea, the defendant has no right to specific performance of an 'executory' agreement." At 249, 627 A.2d at 1184. (Emphasis supplied).

*McElroy,* 665 A.2d at 816. The *Spence* decision was itself heavily reliant upon two landmark U.S. Supreme Court cases:

> Where a plea agreement has been entered of record and accepted by the trial court, the state is required to abide by the terms of the plea agreement. *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). However, prior to the entry of a guilty plea, the defendant has no right to specific performance of an "executory" agreement. *Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) [*disapproved of by Puckett v. United States,* 556 U.S. 129, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) ].[3]

*Commonwealth v. Spence,* 534 Pa. 233, 627 A.2d 1176, 1184 (1993).

Here, the keystone of the Commonwealth's argument is premised upon the language by this Court in *McElroy,* deriving from language found in our Supreme Court's ruling in *Porreca,* standing for the proposition that a plea agreement does not exist until it is presented in open court. However, this characterization does not originate from either U.S. Supreme Court precedent, nor any prior precedent of the Pennsylvania Supreme Court, but rather first appears in the *Porreca* decision in a footnote. The trial court, in supporting its equitable enforcement of the plea agreement in this case, relies on *Santobello* and *Mabry,* the U.S. Supreme Court decisions at the heart of both our decision in *McElroy* and our Supreme Court's decision in *Spence.*

In *Santobello,* part of the plea negotiations included a promise that the district attorney would not make a sentencing recommendation (something it would otherwise have the prosecutorial discretion to do). *Santobello,* 404 U.S. at 258, 92 S.Ct.

495. Santobello withdrew his not-guilty plea and pleaded guilty. *Id.* Apparently, no mention of the promise to refrain from a sentencing recommendation was placed on the record during the plea. *Id.* Due to delays in preparing a pre-sentence report, however, a sentencing hearing was not immediately held. *Id.* In the interim, Santobello acquired new counsel, who in turn filed a motion to withdraw the plea in light of new suppression claims that came to light (stemming from a claim that evidence obtained from an illegal search had not been disclosed by the prosecutor) and raised those new claims in additional motions. *Id.* The court denied all the new motions raised by the new attorney, *including the motion to withdraw the guilty plea,* and then scheduled a sentencing hearing. By that time, a new district attorney was handling the case. *Id.* at 259, 92 S.Ct. 495. The new district attorney made a sentencing recommendation, contrary to the oral agreement. *Id.* When raised by counsel, the district attorney stated that the promise had not been made, but even if it had, it was never made part of the record before or during the plea hearing. *Id.* The court sentenced Santobello to 1 year. *Id.* at 260, 92 S.Ct. 495. At a later stage during the appeal, the district attorney admitted the promise had been made, though continued to assert that it had never been made part of the record. *Id.* at 262, 92 S.Ct. 495.

The Court in *Santobello* determined that:

> This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances

---

**3.** In *Puckett,* the U.S. Supreme Court applied harmless error test to a breach of a plea

agreement, a concern that is not at issue in the instant case.

will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

On this record, petitioner "bargained" and negotiated for a particular plea in order to secure dismissal of more serious charges, but also on condition that no sentence recommendation would be made by the prosecutor. It is now conceded that the promise to abstain from a recommendation was made, and at this stage the prosecution is not in a good position to argue that its inadvertent breach of agreement is immaterial. The staff lawyers in a prosecutor's office have the burden of "letting the left hand know what the right hand is doing" or has done. That the breach of agreement was inadvertent does not lessen its impact.

We need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the plea. He stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration. The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, i.e., the opportunity to withdraw his plea of guilty. We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge.

*Id.* at 262–63, 92 S.Ct. 495.

In *Mabry*, an offer was extended to the defendant for a 21–year sentence to run concurrent to other sentences Mabry was serving. *Mabry*, 467 U.S. at 506, 104 S.Ct. 2543. When Mabry attempted to convey his acceptance, the prosecutor withdrew the offer, and instead offered a 21–year consecutive sentence. *Id.* Mabry then pleaded guilty, and appealed in an attempt to enforce the terms originally offered but later withdrawn by prosecutors. *Id.* The U.S. Supreme Court held:

Santobello demonstrates why respondent may not successfully attack his plea of guilty. Respondent's plea was in no sense induced by the prosecutor's withdrawn offer; unlike *Santobello*, who pleaded guilty thinking he had bargained for a specific prosecutorial sentencing recommendation which was not ultimately made, at the time respondent pleaded guilty he knew the prosecution would recommend a 21–year consecutive sentence. Respondent does not challenge the District Court's finding that he pleaded guilty with the advice of competent counsel and with full awareness of the consequences—he knew that the prosecutor would recommend and that the judge could impose the sentence now under attack. Respondent's plea was thus in no sense the product of governmental deception; it rested on no "unfulfilled promise" and fully satisfied the test for voluntariness and intelligence.

Thus, because it did not impair the voluntariness or intelligence of his guilty plea, respondent's inability to enforce

the prosecutor's offer is without constitutional significance. Neither is the question whether the prosecutor was negligent or otherwise culpable in first making and then withdrawing his offer relevant. The Due Process Clause is not a code of ethics for prosecutors; its concern is with the manner in which persons are deprived of their liberty. Here respondent was not deprived of his liberty in any fundamentally unfair way. Respondent was fully aware of the likely consequences when he pleaded guilty; it is not unfair to expect him to live with those consequences now.

*Id.* at 510–11, 104 S.Ct. 2543 (footnotes omitted).

Against this backdrop, the Commonwealth asserts that Mebane has no right to enforcement of the plea offer made by the prosecutor *because* the plea agreement did not "exist" until it was presented in open court. The Commonwealth's argument fails on two fronts. First, simply because Mebane does not have a right to specific enforcement of the agreement does not necessarily deprive the trial court of the discretion to enforce the plea agreement in circumstances where enforcement is in the interest of justice. Second, the existential question of whether an agreement exists prior to its presentment in open court may be relevant to, but not necessarily dispositive of, the determination of whether enforcement is justified as a matter of judicial discretion rather than as a matter of right.

The language in *Porreca* relied upon by the Commonwealth, suggesting that a plea agreement does not exist until it has been presented in open court (hereinafter "the *McElroy/Porreca* rule"), was not supported by citation to any legal authority, nor was it dispositive of the issues in that case. It was only dicta. This Court's suggestion in *McElroy* that *Porreca* pro-

vided a definitive interpretation of Pa. R.Crim.P. 590 as applied to discretionary enforcement of an agreement rather than enforcement as a matter of right is suspect. The relevant language in the statute merely requires that "[w]hen counsel for both sides have arrived at a plea agreement, they shall state on the record in open court, in the presence of the defendant, the terms of the agreement. . . ." The statute says nothing regarding the "existence" of the agreement prior to the required memorialization. Again, it may be true that memorialization in open court of the terms of a plea agreement is required for a defendant to successfully assert a right to specific enforcement of the agreement; however, that is not the case before us.

Here, we are presented with a unique set of circumstances wherein the trial court determined that enforcement of a plea agreement was warranted in the interest of justice, as a matter of judicial discretion, and not as a matter of right to specific performance—a distinction that has not been addressed in prior decisions citing the *Porreca/McElroy* rule. We therefore decline to extend the *Porreca/McElroy* rule, assuming it is not mere dicta, beyond situations where a claim is made by a defendant that a right exists to specific performance of a plea agreement.

Nothing in the *Santobello* or *Mabry* decisions suggests that the trial court's actions in this case constitute an abuse of discretion or an error of law. Indeed, the lynchpin of the Commonwealth's argument is the *Porreca/McElroy* rule, which we find both illogical and inapplicable in this instance, even if we were to ignore that it is at best a rule of thumb, if not mere dicta. The trial court acknowledged that a "defendant does not have a right to specific performance of executory agreements . . ." but, nonetheless, determined that the

"unique circumstances of this case and fundamental fairness demanded a different result, ..." leading the trial court to determine that enforcement of the terms of the plea agreement was in the interest of justice. TCO, at 5.

The trial court found that the prosecutor "vulpinely used ... information regarding the Trial Court's ruling prior to its disclosure to defense counsel[,]" leading the defendant to proceed for a considerable period of time under the impression that he would be pleading guilty on the scheduled trial date under the agreed upon terms. *Id.* at 8. These factual conclusions are adequately supported by the record and, thus, we conclude that the trial court acted in conformity with the general policy of maintaining the integrity of the plea bargain process when it determined that enforcement of the plea agreement was warranted in the unique circumstances of this case. In doing so, the trial court did not abuse its discretion nor commit an error of law.

The Commonwealth also argues in the alternative, however, that by enforcing the terms of the plea agreement, trial court imposed an illegal sentence, because when the prosecutor "rescinded the original offer prior to presentation in court, the court was required by statute to impose the mandatory minimum sentence." Commonwealth's Brief, at 15. Accordingly, the Commonwealth asserts that the sentence should be vacated. We find this argument unconvincing.

The Sentencing Code provides that:

(a) **General rule.**—In determining the sentence to be imposed the court shall, except as provided in subsection (a.1), consider and select one or more of the following alternatives, and may impose them consecutively or concurrently:

  (1) An order of probation.

  (2) A determination of guilt without further penalty.

  (3) Partial confinement.

  (4) Total confinement.

  (5) A fine.

  (6) County intermediate punishment.

  (7) State intermediate punishment.

(a.1) **Exception.**—

  (1) Unless specifically authorized under section 9763 (relating to a sentence of county intermediate punishment) or 61 Pa.C.S. Ch. 41 (relating to State intermediate punishment), *subsection (a) shall not apply where a mandatory minimum sentence is otherwise provided by law.*

42 Pa.C.S. § 9721 (emphasis added).

Thus, the Sentencing Code itself dictates that a sentencing court is generally prohibited from imposing a sentence inconsistent with an *applicable* mandatory minimum sentence. Furthermore, "[i]t is well-settled that it is within the sole discretion of the Commonwealth to invoke the mandatory minimum sentence." *Commonwealth v. Smith,* 444 Pa.Super. 652, 664 A.2d 622, 624 (1995). Once properly invoked by the prosecution, a mandatory minimum sentence cannot be circumvented as a matter of judicial discretion.

However, part and parcel of the Commonwealth's broad discretion to invoke the mandatory sentence is the discretion to refrain from invoking the mandatory minimum, a function of the Commonwealth's discretion often employed in the course of plea negotiations with criminal defendants. Indeed, a sentencing court has no discretion or authority to apply a mandatory minimum sentence when the Commonwealth did not give notice of intent to proceed under the applicable mandatory sentencing provision (consistent with the Commonwealth's promise to refrain from invoking the mandatory minimum as part of a plea bargain). *Commonwealth v. Pitt-*

**1250** ■■■■■■■■■■■■■■■■■■■■

*man,* 515 Pa. 272, 528 A.2d 138, 143 (1987) (holding that "the minimum sentencing provisions of [the mandatory sentencing statute] may not be imposed absent notice of *the Commonwealth's intention to proceed*—not the court's intention to proceed—under the section, and it was error for the trial court to have applied the terms of [the mandatory sentencing provision] without such notice."). In this sense, the prosecutor is truly the gatekeeper in determining whether a mandatory minimum sentence must be applied by a sentencing court.

In this case, however, the lower court determined that enforcement of the terms of the plea agreement included enforcement of the prosecutor's promise not to seek invocation of a mandatory minimum sentence. Indeed, the promise not to invoke the mandatory minimum was the agreement's *condicio sine qua non.* Mebane agreed to plead guilty, obviating the risk to the Commonwealth that he would be acquitted at a trial, and in return, the Commonwealth agreed to refrain from invoking the mandatory sentence. Enforcement of the plea agreement without enforcement of the promise not to invoke the mandatory sentence would constitute a windfall for the Commonwealth at Mebane's expense.

Still, despite an attempt to characterize this issue as one pertaining to the legality of the sentence, the Commonwealth is making a thinly veiled ancillary attack on the enforcement of the plea agreement itself. The Commonwealth indisputably had the authority to refuse to invoke the mandatory minimum in exchange for Mebane's guilty plea. We have determined that the lower court did not abuse its discretion when it chose to enforce that agreement despite the Commonwealth's attempt to renege. Because the plea agreement included a waiver of the Commonwealth's right to invoke the mandatory minimum, the Commonwealth's claim that the sentence imposed is illegal is illusory and, therefore, without merit.

Judgment of sentence affirmed.