**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Stephen J. PARSONS, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 21, 2008.

Filed April 9, 2009.

Alisa R. Hobart, Assistant District Attorney, Reading, for Commonwealth, appellant.

Andrea E. Mertz, Reading, for appellee.

BEFORE: FORD ELLIOTT, P.J., STEVENS, ORIE MELVIN, BENDER, BOWES, GANTMAN, PANELLA, DONOHUE, and ALLEN, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, the Commonwealth of Pennsylvania, asks us to determine whether the trial court erred when it sentenced Appellee, Stephen A. Parsons, to three (3) months of electronic monitoring under the supervision of the Berks County Probation Office, followed by a five-year term of probation, in violation of the parties' plea agreement that called for a greater sentence. After careful review of the certified record as well as the relevant, settled law pertaining to plea agreements, we hold the court erred when it allowed Appellee to lodge an untimely challenge to the sentencing term of the plea agreement, and when the court set aside the sentencing term, without the Commonwealth's consent, despite the clarity of the plea agreement both as to the charges and the specific sentence, which the court had previously accepted. Accordingly, we vacate the judgment of sentence and remand for imposition of the sentence contained in the parties' plea bargain.

¶ 2 The relevant facts and procedural history of this appeal are as follows. Between January 2002 and April 2003, Appellee engaged in a relationship with the victim, during which the two had sexual intercourse three or four times a week at Appellee's home. Appellee was 19–20 years old, and the victim was 13–14 years old. Appellee and the victim were not married to each other. Both Appellee and the victim are mentally challenged.

¶ 3 As a result, the Commonwealth charged Appellee on March 23, 2004, with numerous offenses including rape (forcible compulsion), sexual assault, involuntary deviate sexual intercourse ("IDSI") forcible compulsion, IDSI (person less than 16 years of age), statutory sexual assault, two counts of aggravated indecent assault (complainant less than 16 years of age), indecent assault (without consent of other), indecent assault (person less than 13 years of age), indecent assault (person less than 16 years of age), indecent exposure, corruption of minors, and rape (person less than 13 years of age).[1]

¶ 4 On January 27, 2006, Appellee entered into a negotiated plea agreement regarding his multiple sex acts with the underage victim. Under the agreement, the Commonwealth agreed to pursue only one count of statutory sexual assault and one count of corruption of minors. In exchange Appellee agreed to plead guilty to these two counts and to accept imposition of a negotiated sentence of six (6) to

---

1. 18 Pa.C.S.A. §§ 3121(a)(1), 3124.1, 3123(a)(1), 3123(a)(7), 3122.1, 3125(8), 3126(a)(1), 3126(a)(7), 3126(a)(8), 3127(a), 6301(a)(1), 3125(8), and 3121(a)(6), respectively.

twenty-three (23) months of county incarceration, followed by five (5) years of probation. Both the charges **and** the sentence were expressly stated in the written plea colloquy. (Statement Accompanying Defendant's Request to Enter a Guilty Plea, signed, dated and stamped 1/27/06, at 1). Appellee's counsel assisted Appellee in completing the written colloquy, and Appellee signed each page on the designated line. (*Id.* at 1–3).

¶ 5 Appellee and the Commonwealth appeared before the court on January 27, 2006, to enter the terms of the plea agreement on the record. The court began with a thorough inquiry into Appellee's understanding of the nature of the charges against him and the rights he was waiving. (N.T. Guilty Plea, 1/27/06, at 2–7). Counsel also verified that he and Appellee had thoroughly reviewed the written colloquy. (*Id.* at 8). After the Commonwealth placed the factual basis for the plea on the record, Appellee admitted to the facts as stated. (*Id.* at 8–9). The following exchange then took place:

> THE COURT: I understand that we do have a plea agreement?
>
> [THE COMMONWEALTH]: Yes, Your Honor.
>
> THE COURT: Can we have that placed on the record?
>
> [THE COMMONWEALTH]: In the plea agreement, there's an agreed upon sentence by the defense and the Commonwealth for a sentence of 6 to 23 months on the statutory sexual assault followed by 5 years' probation on the corruption of minors. This is a charge agreement as the [c]ourt can see from the Information **as well as** the sentencing agreement if the [c]ourt should choose to accept [the agreement]. I have spoken with the victim, the victim's family, as well as the prosecutor in this case and they have no objections to this resolution.
>
> THE COURT: Very well. [Appellee], do you understand that plea agreement?
>
> [APPELLEE]: Yes.
>
> THE COURT: Do you understand that the agreement is that you will go to jail and that would be for a minimum of 6 months and then you would be paroled? Usually in Berks County you're paroled after the minimum which means you probably would be released after 6 months to parole. Parole means supervision. You would have to be reporting in and not getting into anymore trouble and then you would have probation for 5 years. Basically, for another [6½] years you would be under the supervision of the [c]ourt, meaning me as the judge, through the probation office. Do you understand that?
>
> [APPELLEE]: Yes.
>
> THE COURT: And this is what you are agreeing to?
>
> [APPELLEE]: Yes.
>
> THE COURT: Do you understand that I was not involved in the negotiation of this plea agreement and that this is an agreement between you through your attorney and the Commonwealth through the Assistant District Attorney?
>
> [APPELLEE]: Yes.
>
> THE COURT: Do you understand that I am not bound by the plea agreement? In other words, I do not have to follow it if I don't think it's appropriate?
>
> [APPELLEE]: Yes.
>
> THE COURT: Do you understand if I do not follow the plea agreement but give you a different sentence, that you would have the right to withdraw your guilty plea if you choose and proceed to trial?
>
> [APPELLEE]: Yes.

THE COURT: Do you understand that the maximum sentence that could be imposed with regard to Count No. 5, statutory sexual assault, this isn't the sentence that would be given necessarily but this is the greatest sentence that could be given for this charge, would be imprisonment up to 10 years and/or a fine of up to $25,000?

[APPELLEE]: Yes.

THE COURT: And with regard to the charge of corruption of the morals of a minor would be imprisonment of up to 5 years and a fine of $10,000?

[APPELLEE]: Yes.

THE COURT: [Appellee's counsel], reviewing particularly the answers to [statements] 8 and 9 on the colloquy are you of the opinion that your client is capable of knowingly and intelligently tendering a guilty plea in this matter if he chooses to do so at this time? [2]

[APPELLEE'S COUNSEL]: Yes, Your Honor. And I have—one, I would note that I have a report from Dr. Rotenberg dated August 26th of 2005 which indicates that [Appellee] is not *M'Naghten*[3] and he is competent to stand trial and understands the legal procedures. I have also met with [Appellee] I think maybe almost every day since last week to prepare for our trial in this matter and I am convinced he understands what he is doing. I have explained this plea to him. He understands what it is and

he is making that decision and I believe he is competent to make that decision.

THE COURT: Very well. In that case, [Appellee], considering all the answers you have given here this morning both your spoken answers ... as well as the written answers that you gave in your written guilty plea colloquy form through and with your attorney, at this time I would ask you with regard to Count No. 5, statutory sexual assault, at this time are you asking to enter a plea of guilty?

[APPELLEE'S COUNSEL] Do you want to plead guilty?

[APPELLEE]: Yes.

THE COURT: And with regard to Count No. 11, corruption of the morals of a minor, are you also asking to plead guilty?

[APPELLEE]: Yes.

* * *

THE COURT: Very well. I find [Appellee] has knowingly, intelligently, and voluntarily entered his pleas and I will accept those pleas. I understand we would like to defer sentencing for some period of time?

[APPELLEE'S COUNSEL]: Yes, Your Honor. I'm going to ask for a [Presentence Investigation Report] and I would ask that sentencing be scheduled after the completion of the PSI.

2. Statements 8 and 9 on the written colloquy indicated Appellee did not currently or previously suffer from mental illness. Appellee's responses specified "possible depression" and "mild mental retardation" with "learning disability." (Statement Accompanying Defendant's Request to Enter a Guilty Plea at 2). Thus, the court focused on these statements.

3. Under the *M'Naghten* Rule, "to establish a defense on the ground of insanity, it must be

clearly proved that, at the time of committing the act, the party accused was [laboring] under such a defect of reason, from the disease of the mind, as not to know the nature and quality of the act he was doing, or if he did know it that he did not know he was doing what was wrong." *Commonwealth v. Woodhouse,* 401 Pa. 242, 249–50, 164 A.2d 98, 103 (1960) (quoting *M'Naghten's Case,* 10 Cl. & Fin. 200, 8 Eng.Rep. 718 (1843)).

* * *

(*Id.* at 10–12) (emphasis added). The court scheduled sentencing for April 4, 2006, but nothing in the guilty plea proceedings could have prepared the Commonwealth for what happened at sentencing.

¶ 6 On April 4, 2006, the parties appeared before the court for sentencing. The Commonwealth introduced the case and reminded the court that **Appellee** had requested postponement of the sentencing hearing and **Appellee** had asked for the PSI. Some discussion then ensued regarding several mental health reports drafted on Appellee's behalf. Following that review, the Commonwealth placed on the record Appellee's prior record score of zero (0). The offense gravity score for the statutory sexual assault charge was seven (7), and the standard range of the sentencing guidelines on that charge was six (6) to fourteen (14) months. The offense gravity score for the corruption of minors charge was seven (7), and the standard guidelines range was restorative sanctions to nine (9) months. The Commonwealth reminded the court that the parties had agreed on a fixed sentence of six (6) to twenty-three (23) months of incarceration on the statutory sexual assault, followed by five (5) years of probation on the corruption of minors offense. (N.T. Sentencing, 4/4/06, at 4). The Commonwealth asked the court to honor the negotiated plea agreement. (*Id.* at 4–5).

¶ 7 After a few preliminary remarks, the following occurred:

[APPELLEE'S COUNSEL]: We believe this is the appropriate charge and the only charge [Appellee] should have properly been charged with. We don't consider this a great plea agreement. The Commonwealth ignored all of the mitigating factors in this case. The girl in this case, we believe she had the same

intellectual capacity as [Appellee]. She lied to her mother, and that's how she was taken to [Appellee's] house. She lied to [Appellee] and told him she was 16. While a fully functioning adult would have been able to see through that, [Appellee] was not.

[A] prison sentence of 6 months is at the bottom of the standard range, but, however, I think the [c]ourt should consider the, you know, it is going to strip him completely of his support system. It is going to be a harsh sentence for him. Six months is going to be a lot harsher of a sentence for him than a normal functioning individual.

It is clear he is probably going to be picked on and victimized in prison. I think the [c]ourt should note that but hopefully he will make his prison time, parole out, and be able to get back into his support system. He has got his large family. . . .

[THE COMMONWEALTH]: I object to two comments that [Appellee's counsel] made; one, that this is a harsh plea agreement. I would note to Your Honor that [Appellee] has been charged with rape. While the victim was certainly not looking forward to—and she was facing continuing harassment, not from [Appellee] but from [Appellee's] family—

* * *

[THE COMMONWEALTH]: So Your Honor, this is a very generous charge agreement and sentencing agreement and in light of what [Appellee] was confronted with the rest of the charges. With respect to the characterization of the victim that she lied to him, that is not correct Your Honor.

* * *

(*Id.* at 6–8). Despite the clarity of the plea agreement both as to the charges and the specific sentence, and notwithstanding Appellee's acknowledgement of the expected sentence at the plea hearing, the court allowed Appellee to lodge an untimely challenge to the sentencing term of the plea agreement and then set that term aside, while retaining only the charging terms. The court simply refused to impose the agreed-upon fixed sentence of six (6) to twenty-three (23) months on the statutory sexual assault followed by five (5) years of probation on the corruption of minors offense. Instead, the court placed Appellee on electronic monitoring for three (3) months under the supervision of the Berks County Probation Office, for the statutory sexual assault count. The Commonwealth immediately objected, observing that the court's sentence constituted a rejection of the plea agreement. Consequently, the Commonwealth asked the court to set the matter for trial and transfer it to the trial list. At this point, the court told the prosecutor to file a motion with case law supporting the Commonwealth's right to withdraw the plea agreement. Then, the court imposed a consecutive term of five years' probation on the corruption of minors count. The proceedings adjourned at 10:30 a.m. and recommenced at 1:30 p.m.

¶ 8 When the court reconvened the sentencing hearing that afternoon, the Commonwealth presented its motion to withdraw the plea agreement on the ground that the court had fundamentally rejected the plea agreement. At the conclusion of the hearing, the court denied the Commonwealth's motion, stating:

> THE COURT: Very well. I have reviewed all of the cases. I disagree with the Commonwealth. Commonwealth's motion is denied. Commonwealth is also put on notice that as long as the Commonwealth is of this position, this court will not be accepting any plea agreements but will only be accepting charge agreements from this point until there is a decision [or] the time for appeal has run.

(*Id.* at 18).

¶ 9 The Commonwealth filed its notice of appeal on the same day. The court immediately ordered the Commonwealth to file a concise statement of matter complained of on appeal pursuant to Pa.R.A.P.1925(b). The Commonwealth timely complied on April 18, 2006.

¶ 10 On appeal, a panel of this Court decided the Commonwealth was challenging the "discretionary aspects of sentencing"; and, because the Commonwealth did not include in its brief a concise statement of the reasons for allowance of appeal pursuant to Pa.R.A.P. 2119(f), the panel deemed the Commonwealth's claim waived.

¶ 11 Upon the Commonwealth's motion, this Court later withdrew the panel decision, granted *en banc* reargument, and directed the parties, in addition to the issues previously raised, to brief and argue whether the failure of a sentencing judge to follow a negotiated plea is an issue that must be preserved in a Rule 2119(f) statement. *See Per Curiam* Order, dated May 30, 2007.

¶ 12 The Commonwealth presents the following issues for review:

> DID THE TRIAL COURT ERR BY UNILATERALLY ALTERING THE TERMS OF THE NEGOTIATED PLEA AGREEMENT, WHICH IT PREVIOUSLY ACCEPTED?

> ALTERNATIVELY, DID THE TRIAL COURT EXCEED ITS AUTHORITY BY FAILING TO SENTENCE [APPELLEE] IN ACCORDANCE WITH

THE TERMS OF THE NEGOTIATED PLEA AGREEMENT?

(Commonwealth's Brief at 4).

 ¶ 13 The Commonwealth argues the parties reached an interdependent agreement both as to charges and sentence in this case. When the court accepted the plea agreement, it was then bound by the agreed-upon sentence contained in the agreement. The Commonwealth claims the court should have allowed the Commonwealth to exercise its right to withdraw the plea agreement, when the court later rejected the negotiated sentence and refused to impose it. Once the court accepted the negotiated plea to the reduced charges, the court was then obligated to impose the agreed-upon sentence and no longer had the authority to impose a substantially lower sentence. In essence, the court unilaterally modified a non-severable term of the parties' agreement. The Commonwealth contends that if the court were dissatisfied with the sentencing aspect of the agreement, then the proper recourse would have been to reject the plea agreement and return the parties to parity. Because the court accepted the plea but later altered the negotiated sentence provision of the plea agreement without the Commonwealth's consent, the Commonwealth concludes the judgment of sentence must be vacated and the case remanded for imposition of the sentence pursuant to the plea bargain.

¶ 14 Alternatively, the Commonwealth respectfully included a Rule 2119(f) concise statement of reasons for allowance of appeal in its substituted brief, without conceding that its claim actually implicates the discretionary aspects of the sentence imposed. In the corresponding segment of its brief, the Commonwealth argues the panel misapprehended the Commonwealth's position as a challenge to the sentence imposed, rather than to the court's failure to accept or reject the entire plea bargain. As between the Commonwealth and Appellee, the expectations of the bargain were for specific charges **and** a specific sentence. All the terms of the agreement were placed on the record at the guilty plea hearing, and the court accepted Appellee's plea. When Appellee's counsel later challenged the agreed-upon sentence at sentencing, the court decided to reject the sentencing provision of the parties' agreement. In short, the court altered the plea agreement without the Commonwealth's approval; and, as soon as the court rejected the sentencing term of the plea bargain, the court disavowed the plea bargain. The Commonwealth concludes it is not contesting the discretionary aspects of sentencing; the Commonwealth's position is that the sentence imposed should be deemed void as it violates the parties' plea bargain. We agree.

¶ 15 Guilty pleas in this Commonwealth are governed by Rule 590 of the Pennsylvania Rules of Criminal Procedure, which states in relevant part: Rule 590.

**Pleas and Plea Agreements**

 **(A) Generally**

 (1) Pleas shall be taken in open court.

 (2) A defendant may plead not guilty, guilty, or, with the consent of the judge, *nolo contendere.* If the defendant refuses to plead, the judge shall enter a plea of not guilty on the defendant's behalf.

 (3) The judge may refuse to accept a plea of guilty or *nolo contendere,* and shall not accept it unless the judge determines after inquiry of the defendant that the plea is voluntarily and understandingly tendered. Such inquiry shall appear on the record.

 **(B) Plea Agreements**

 (1) When counsel for both sides have arrived at a plea agreement, they

shall state on the record in open court, in the presence of the defendant, the terms of the agreement, unless the judge orders, for good cause shown and with the consent of the defendant, counsel for the defendant, and the attorney for the Commonwealth, that specific conditions in the agreement be placed on the record *in camera* and the record sealed.

(2) The judge shall conduct a separate inquiry of the defendant on the record to determine whether the defendant understands and voluntarily accepts the terms of the plea agreement on which the guilty plea or plea of *nolo contendere* is based.

Pa.R.Crim.P. 590(A)-(B).

It is well recognized that the guilty plea and the frequently concomitant plea bargain are valuable implements in our criminal justice system. The disposition of criminal charges by agreement between the prosecutor and the accused, ... is an essential component of the administration of justice. Properly administered, it is to be encouraged. In this Commonwealth, the practice of plea bargaining is generally regarded favorably, and is legitimized and governed by court rule.

*Commonwealth v. Schmoyer,* 280 Pa.Super. 406, 413–14, 421 A.2d 786, 789 (1980). In *Schmoyer,* this Court also noted that the desirability of disposing of criminal charges through plea bargaining is based on the premise that a plea agreement is advantageous **to all concerned**. . . .

*Commonwealth v. Smith,* 444 Pa.Super. 652, 664 A.2d 622, 625 (1995), appeal denied, 544 Pa. 683, 679 A.2d 229 (1996) (some emphasis added). To accomplish this purpose, Pennsylvania law allows a broad continuum in plea bargains:

In an open plea agreement, there is an agreement as to the charges to be brought, but no agreement at all to restrict the prosecution's right to seek the maximum sentences applicable to those charges. At the other end of the negotiated plea agreement continuum, a plea agreement may specify not only the charges to be brought, **but also the specific penalties to be imposed.** In between these extremes there are various options, including an agreement to make no recommendation or ... an agreement to make a favorable but non-binding recommendation. So long as the limits of the agreement are plainly **set forth** on the record, **understood** and **agreed to by the parties,** and **approved by the trial court,** we find no impediment in [Rule 590] to the offer, acceptance, performance or enforcement of such plea agreements.

*Commonwealth v. Porreca,* [389 Pa.Super 553, 567 A.2d 1044, 1046–47 (1989) ].

*Commonwealth v. McClendon,* 403 Pa.Super. 467, 589 A.2d 706, 710 (1991) *(en banc), appeal denied,* 528 Pa. 622, 597 A.2d 1151 (1991) (emphasis added).[4]

A "mutuality of advantage" to defendants and prosecutors flows from the ratification of the bargain. When a defendant withdraws or successfully chal-

4. In *Porreca,* our Supreme Court reversed this Court's judgment and remanded the case to the Court of Common Pleas for a new guilty plea colloquy, because the trial court had failed to inquire about the threats or promises Porreca referred to in response to question 12 of the written colloquy. *Commonwealth v. Porreca,* 528 Pa. 46, 54–56, 595 A.2d 23, 27– 28 (1991). The reversal did not affect the validity of the language describing the range of plea options in this jurisdiction. *See Commonwealth v. Dalberto,* 436 Pa.Super. 391, 648 A.2d 16, 20 n. 4 (1994), *appeal denied,* 540 Pa. 594, 655 A.2d 983 (1995), *cert. denied,* 516 U.S. 818, 116 S.Ct. 75, 133 L.Ed.2d 34 (1995).

lenges his plea, the bargain is abrogated and the defendant must be prepared to accept all of the consequences which the plea originally sought to avoid.

*Commonwealth v. Ward,* 493 Pa. 115, 125, 425 A.2d 401, 406 (1981), *cert. denied,* 451 U.S. 974, 101 S.Ct. 2055, 68 L.Ed.2d 354 (1981).

 ¶ 16 Where the plea bargain calls for a specific sentence that is beyond the prosecutor's narrowly limited authority in sentencing matters, the plea bargain implicates the court's substantive sentencing power, as well as its guardianship role, and must have court approval. *Commonwealth v. Smith,* 444 Pa.Super. 652, 664 A.2d 622 (1995), *appeal denied,* 544 Pa. 683, 679 A.2d 229 (1996). Thus, the trial court has broad discretion in approving or rejecting plea agreements. *Commonwealth v. Chazin,* 873 A.2d 732, 737 (Pa.Super.2005), *appeal denied,* 585 Pa. 686, 887 A.2d 1239 (2005). The court may reject the plea bargain if the court thinks it does not serve the interests of justice. *Id.* If the court is dissatisfied with any of the terms of the plea bargain, it should not accept the plea; instead, it should give the parties the option of proceeding to trial before a jury. *See* Pa.R.Crim.P. 590(A)(3) and *Comment.*[5] Assuming the plea agreement is legally possible to fulfill, when the parties enter the plea agreement on the record, and the court accepts and approves the plea, then the parties and the court must abide by the terms of the agreement. *See Commonwealth v. Kersteter,* 877 A.2d 466, 470 (Pa.Super.2005). *See also Commonwealth v. Townsend,* 693 A.2d 980 (Pa.Super.1997) (reiterating distinction between agreements in which parties have agreed upon specific sentence and agreements in which parties have left length of sentence to discretion of court); *Commonwealth v. Coles,* 365 Pa.Super. 562, 530 A.2d 453 (1987), *appeal denied,* 522 Pa. 572, 559 A.2d 34 (1989) (holding court cannot unilaterally countermand specific sentence in plea bargain and reduce sentence without Commonwealth's consent).

¶ 17 Considering the pertinent case law, *Coles* is by far the most relevant, albeit not precisely on point. In *Coles,* the Commonwealth charged the defendant with several theft offenses under three different criminal informations, each also including related conspiracy charges. The defendant entered voluntary guilty pleas to criminal attempt-burglary, two counts of retail theft and two counts of criminal conspiracy. As part of the plea negotiations, the Commonwealth recommended a sentence of incarceration of two and one-half (2½) years, less one day, to five (5) years, less one day, for each of the offenses to run concurrently. The court accepted the defendant's

---

5. Rule 590 was renumbered, and the *Comment* revised, in March 2000, effective April 1, 2001. The *Comment* states: "Former paragraph (B)(3) was deleted in 1995 for two reasons. The first sentence merely reiterated an earlier provision in the rule. *See* paragraph (A)(3). The second sentence concerning the withdrawal of a guilty plea was deleted to eliminate the confusion generated when that provision was read in conjunction with Rule 591. As provided in Rule 591, it is a matter of judicial discretion **and case law** whether to permit or direct a guilty plea or plea of *nolo contendere* to be withdrawn" (emphasis added). Paragraph (A)(3) now governs

case law that cited to former paragraph (B)(3).

An honest reading of Rule 591 of the Pennsylvania Rules of Criminal Procedure makes clear the rule was intended to govern the procedures attendant to a defendant's withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty. Under Rule 591, the court can also, *sua sponte,* direct the defendant to withdraw a plea. The rule as stated does not directly control the Commonwealth's right to withdraw a plea bargain. The Commonwealth's rights are governed by prevailing case law. *See* Pa.R.Crim.P. 590 *Comment.*

plea and imposed the recommended sentence. One week later, the defendant moved for reconsideration of the sentence, arguing mitigating factors. The Commonwealth opposed the motion to reduce the sentence. After a hearing, the court reduced the defendant's minimum sentence by six (6) months. The Commonwealth filed a motion to reinstate the sentence pursuant to the plea bargain. The court denied the Commonwealth's motion, and the defendant's sentence remained as modified. The Commonwealth timely appealed.

¶ 18 Quoting from the oral plea colloquy, this Court noted the trial court had accepted the plea, which included the terms of the plea bargain, but days later, the trial court unilaterally countermanded the agreement. This Court held the trial court should not have reduced the sentence without the Commonwealth's consent:

> If the trial judge was convinced that the sentence was inappropriate under those standards, vacating the sentence and setting aside the guilty plea would return the Commonwealth and defendant to parity, from which a new plea could be entered or the case presented for trial. In effect, **if the judge had no basis for permitting withdrawal of the guilty plea, none existed for modification of sentence.** If either party to a negotiated plea agreement believed the other side could, at any time following entry of sentence, approach the judge and have the sentence unilaterally altered, neither the Commonwealth nor any defendant would be willing to enter into such an agreement. As we stated earlier, the Commonwealth cannot violate the conditions of its bargain, . . . nor should the court permit the defendant to do so . . . .

*Id.* at 458 (emphasis added). This Court vacated the modified judgment of sentence and ordered imposition of the sentence pursuant to the plea bargain. *Id.*

¶ 19 In the instant case, the Commonwealth's position is even stronger than it was in *Coles,* which involved only a sentence recommendation. Here, the Commonwealth and Appellee presented the court at the guilty plea hearing with the explicit negotiated terms of their plea bargain, which included a specific sentence, not just a "sentencing recommendation." Appellee and his counsel assured the court that Appellee fully understood all the terms of the plea agreement. The court then reviewed with Appellee on the record all the terms of the plea bargain, including the sentence. Absolutely nothing at the plea hearing even remotely suggested that the court or Appellee disagreed with the sentencing term of the plea bargain as presented. At the close of the plea hearing, the court accepted the plea, which included the agreed-upon sentencing term. The court's acceptance of the plea created legitimate expectations for both sides as to the sentence to be imposed. The present case involves Appellee's repudiation and the court's unilateral modification of the parties' plea bargain prior to and during sentencing, which had been delayed solely because Appellee's counsel inexplicably requested a PSI report.

¶ 20 At sentencing, counsel on Appellee's behalf tried to abrogate the plea bargain by criticizing the very sentence Appellee had previously agreed to, as accepted by the trial court, and by arguing for a lesser sentence with no jail time. When the court held the Commonwealth to the charging terms of the plea bargain, but gave Appellee a lesser sentence than called for in the parties' agreement, the court overstepped its bounds, defeated the Commonwealth's rightful expectations, and

frustrated the *quid pro quo* of the plea bargain.[6] The court should have at least sought the Commonwealth's consent before the court considered a lesser sentence. *See id.*

¶ 21 Not every error of law or abuse of discretion involving a judgment of sentence in a criminal case necessarily implicates the discretionary aspects of sentencing. Here, the Commonwealth questions the court's authority to tinker with the negotiated plea bargain, once the court has accepted the plea. In this appeal, the Commonwealth's challenge is to the plea process as a whole, not the discretionary aspects of sentencing *per se.*

¶ 22 As the certified record makes clear, the parties' plea bargain involved a specific sentence, **not** merely a "sentencing recommendation." Thus, the case presents as (1) the trial court's failure to preserve the integrity of the plea bargain process and (2) Appellee's breach of a plea agreement entered on the record and accepted by both Appellee and the court. Consequently, we agree with the Commonwealth that the issue before us does not involve a challenge to the discretionary aspects of sentencing. The individualized sentencing

process in this Commonwealth does not prohibit or contravene the freedom of the Commonwealth and the defendant to waive certain rights and enter into a plea bargain that includes a specified sentence.

¶ 23 With respect to double jeopardy, in *Commonwealth v. Rosario,* 545 Pa. 4, 679 A.2d 756 (1996), our Supreme Court held that for purposes of the statute barring re-prosecution for the same offense, when the former prosecution resulted in a conviction based on a guilty plea "accepted by the court," jeopardy attaches after sentencing. *Id.* at 9–10, 679 A.2d at 759. Thus, a court can order the pre-sentence withdrawal of a defendant's guilty plea without risking the defendant's rights against double jeopardy, should the Commonwealth re-prosecute the defendant for the same offense. *Id. See also* Pa. R.Crim.P. 591 (providing: "At any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct, *sua sponte,* the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty").

¶ 24 Here, the court's imposition of a sentence, in repudiation of the accepted

---

**6.** We cannot endorse a strategy that rewards Appellee for deliberately trying to breach the plea agreement to render it "partially" ineffective as to the sentence, while the Commonwealth remains bound to the agreement in full. *See Townsend, supra* (disapproving policy that allows court to modify specific sentencing agreement without consent of Commonwealth, stating: "In effect, this would deny the Commonwealth the full benefit of the agreement, which it reached with the defendant and the defendant, in turn, would receive a windfall").

Further, case law related to sentencing following revocation of parole or probation refers to a different situation. *See, e.g., Commonwealth v. Wallace,* 582 Pa. 234, 870 A.2d 838 (2005) and *Commonwealth v. Raphael,* 879 A.2d 1264 (Pa.Super.2005), *appeal denied,* 587 Pa. 712, 898 A.2d 1070 (2006).

These cases enunciate the legal principle that, where the original sentence evolved from a plea bargain, and a defendant later violates his parole or probation, the defendant has effectively abrogated the underlying plea bargain. At re-sentencing following revocation of parole/probation, the court is no longer bound by the terms of the original plea bargain; so breached, the sentencing aspect of the original plea bargain is no longer binding on the court, which then has the full panoply of sentencing options available upon re-sentencing following revocation. These revocation cases are limited in their scope and plainly do not stand for the overbroad proposition that sentencing is always left to the sound discretion of the trial court in every plea bargain case, regardless of the court's acceptance of a negotiated plea agreement for a specified sentence.

plea bargain and over the Commonwealth's objection, triggered double jeopardy distress in this case. Under prevailing law, the Commonwealth is now prohibited from prosecuting Appellee on the two counts to which he pled guilty and was sentenced, because jeopardy for purposes of retrial attached at sentencing on those two counts. Given the numerous initial charges in this case, however, the Commonwealth could still prosecute Appellee on those charges to which he did not plead guilty. *See, e.g., Commonwealth v. Ward,* 493 Pa. 115, 425 A.2d 401 (1981), *cert. denied,* 451 U.S. 974, 101 S.Ct. 2055, 68 L.Ed.2d 354 (1981) (holding guilty plea to some charges does not carry "implied acquittal" to all other charges and does not automatically create valid claim of former jeopardy as to further prosecution).

■ ¶ 25 A viable alternative resolution of this case would be, as the Commonwealth requests, to vacate the judgment of sentence and remand for imposition of the sentence pursuant to the plea bargain. *See Coles, supra.* Appellee entered his guilty plea with full knowledge of the terms of his plea bargain, and the court accepted the plea. Ultimately, Appellee received more than the benefit of his bargain in light of the reduced sentence. Appellee had no reasonable expectation of finality in that reduced sentence. Thus, remand for resentencing according to the plea bargain does not involve double jeopardy. *See* 42 Pa.C.S.A. § 9781 (outlining appellate review of sentence). *See, e.g., Commonwealth v. Sojourner,* 513 Pa. 36, 44, 518 A.2d 1145, 1149 (1986) (stating: "The double jeopardy considerations that bar reprosecution after an acquittal do not prohibit review of a sentence.... This limited appeal does not involve a retrial or approximate the ordeal of a trial on the basic issue of guilt or innocence.... The defendant, of course, is charged with the

knowledge of the statute [allowing for an appeal] and its provisions, and has no expectation of finality in his sentence until the appeal is concluded or the time to appeal has expired").

■ ¶ 26 Moreover, we observe defense counsel's principal argument for reducing the agreed-upon and expected sentence was that the victim tricked Appellee and that the victim consented to the sexual activity. In its opinion, the trial court expressly refers to this as a "defense" or justification for the compromised sentence, stating: "[Appellee] lacked capacity to understand the seriousness of the **consensual** sexual behavior." (Trial Court Opinion, dated May 16, 2006, at 6). We respectfully reject this stance. The offenses to which Appellant pled guilty were statutory offenses; under Pennsylvania law, the victim in this case had no capacity to "consent." Therefore, the court erred when it justified the reduced sentence on the basis that the sexual behavior was "consensual." The Commonwealth's plea bargain with Appellee fully considered the relevant circumstances and mitigating factors unique to Appellee's situation. Any further consideration given to the mutuality of the sexual activity was inappropriate.

¶ 27 Finally, the court's comments at sentencing make clear the court understood the parties' plea agreement included a specific sentence, when the court said: "Commonwealth is also put on notice that as long as the Commonwealth is of this position, this court will not be accepting any plea agreements but will only be accepting charge agreements from this point until there is a decision [or] the time for appeal has run." (N.T. Sentencing at 18). We also expressly disapprove the court's wholesale refusal to accept any plea agreements pending appeal, to the extent the court intended to punish the Commonwealth for exercising· its right to appeal.

¶ 28 After careful review of the certified record as well as the relevant, settled law pertaining to plea agreements, we hold the court erred when it allowed Appellee to lodge an untimely challenge to the sentencing term of the plea agreement, and when the court set aside the sentencing term, without the Commonwealth's consent, despite the clarity of the plea agreement both as to the charges and the specific sentence, which the court had previously accepted. Accordingly, we vacate the judgment of sentence and remand for imposition of the sentence contained in the parties' plea bargain.

¶ 29 Judgment of sentence vacated; case remanded for resentencing. Jurisdiction is relinquished.

¶ 30 *JUDGE BENDER FILES A DISSENTING OPINION IN WHICH PRESIDENT JUDGE FORD ELLIOTT AND JUDGE DONOHUE JOIN.

DISSENTING OPINION BY BENDER, J.:

¶ 1 I respectfully dissent. The Majority would circumvent the trial judge's rightful discretion in imposing sentence on the basis of characterizations the record does not sustain. As a direct result, the Majority's ruling works a grievous injustice for the sake of expanding a plea practice not properly applicable to this case. Moreover, the Majority's suggestion that, upon remand, the defendant must be committed to the prison term originally at issue despite the trial judge's imposition of a different sentence is wholly unprecedented and poses troubling questions of due process and double jeopardy.

¶ 2 Initially, the Majority overlooks the compelling reasons cited by the trial judge in support of his sentence and conflates the reasons for the trial judge's ruling with elements of the argument of counsel. Majority Op. at 1271. What this record makes clear—and the trial court relied on in imposing sentence—is that the defendant is mentally retarded, his tested I.Q. ranging between 50 and 60. Order, 4/4/06, at 1. He cannot read or write, N.T., Guilty Plea, 1/27/06, at 2–3, and given the extraordinary measures taken by both counsel and the trial judge to reduce the abstractions of the plea process to the simplest possible expression, is obviously unable to understand matters of any complexity. Moreover, he did not plead guilty to a crime of violence and the Commonwealth made no offer of proof suggesting violent conduct. Consequently, the trial judge reached a conclusion, in the proper exercise of his discretion, to make a downward departure from the Commonwealth's sentencing recommendation.[1] In support of this decision, the judge emphasized not counsel's argument that the sexual contact at issue was consensual, but that the defendant was simply too vulnerable to be consigned to the predations of the county jail:

> I considered the facts that have been agreed to in this matter, and the reports from Dr. Rotenberg. I believe that the actions of the defendant were totally and wholly inappropriate. I don't believe that incarceration is an appropriate punishment, and, in fact, may lead to worse situations, quite frankly. If this defendant is incarcerated, he will be a victim, there is no question in my mind, unless he was kept in solitary confinement,

1. Despite the Majority's insistence that the parties reached a binding plea agreement from which the trial court purportedly could not depart, the record is in fact unclear. As I will discuss, *supra,* the record suggests the court's understanding and that of *both* counsel that the term of the sentence to be imposed was indeed a *recommendation.*

which is also an inappropriate punishment.

N.T., Sentencing, 4/4/06, at 10. In his sentencing order, the judge amplified his concerns as follows:

> [T]he Defendant having been sentenced in the mitigated range, this Court notes the following reasons for its departure: Offender is of limited intelligence, having an IQ of only 50–60, thus creating a substantial risk of victimization if incarcerated. Defendant does not have the mental means to defend himself or possibly even report abuse if incarcerated. Further, the guidelines are inappropriate under the circumstances of this case, offender lacked capacity for judgment during crime, offender is good candidate for rehabilitation, offender has no prior adult record or minor adult record, offender has not been incarcerated before, offender waived a jury trial and offender is young. The offender lacked capacity to understand the seriousness of the consensual sexual behavior.

Order, 4/4/06, at 1. I am deeply troubled that the Majority should so blithely disregard these most compelling observations. Moreover, it strikes me as grievously unjust that a trial judge's exercise of discretion, based upon elements of personal observation and interaction at the very core of our individualized sentencing process, should be swept aside in the interest of preserving for the Commonwealth the supposed "benefit of its bargain" when the bargain is itself less than clear. *See* Op. at 1271.

¶ 3 Accordingly, I find the Majority's ruling vastly overbroad, as it effectively divests the trial judge of the discretion allowed by the Sentencing Code in all but the most clearly "open" pleas, where the Commonwealth and the defendant have agreed to no more than the charges pled and the record leaves not a shred of doubt

about that limitation. Such a holding here is inappropriate; despite the Majority's insistence that "the parties' plea bargain involved a specific sentence, **not** merely a 'sentencing recommendation,'" Op. at 1270 (original emphasis), the record suggests an understanding by the court *and the Commonwealth* that the parties had merely reached an agreement for a reduction in charges with a sentence recommendation to be measured against standard sentencing factors—which the Commonwealth enumerated on the record. As described by the Commonwealth: "This is a charge agreement as the Court can see from the Information *as well as the sentencing agreement if the Court should choose to accept it."* N.T., Guilty Plea, 1/27/06, at 9. Although the trial judge explained the terms of the "sentencing agreement" to the defendant, *see id.,* he elaborated that the court was not bound by the plea agreement as a whole, stating "I do not have to follow it if I don't think it's appropriate." *Id.* at 10. Subject to that caveat, *which elicited no objection from the Commonwealth,* the court accepted Parsons' plea. *Id.* at 12. Significantly, the court then ordered a PSI report and deferred sentencing for its completion. *Id.* at 12–13.

¶ 4 The Majority appraises this scenario merely by noting that the requests for deferred sentencing and a pre-sentence investigation were made by Parsons' counsel. Op., at 1264. Unfortunately, the Majority fails to acknowledge the complete failure of the Commonwealth to oppose either request or assert that if, in fact, a binding agreement on the sentence existed, *a PSI report was completely unnecessary.* Moreover, the Commonwealth compounded the matter when, at the subsequent sentencing hearing, it detailed the appropriate ranges under the Sentencing Guidelines, the offense gravity score, and the defendant's prior record score of zero.

N.T., Sentencing, 4/4/06, at 3. After review of elements of the PSI report on the record, the prosecutor then went on to *request* imposition of the "agreed" sentence pursuant to the "sentencing agreement," as distinct from the "charging agreement." *Id.* at 4–5. The following discussion by the prosecutor, *offered over two months after the trial judge had accepted Parsons' plea,* is plainly a recommendation for sentencing:

In order that the victim in this case will have to avoid reliving, through testimony, the trauma of what the defendant subjected her to we believe this is, in fact, a very generous plea offer for this young man; both the charge agreement and the sentencing agreement the Commonwealth isn't looking for Megan's Law convictions and certainly isn't pursuing state incarceration. I would ask the court to note that throughout, despite the long time which this case has been pending, the victim has not had to testify. The defendant waived his preliminary hearing and time passed before the defendant could file a pretrial and he took the guilty plea prior to trial so she didn't have to testify then.

In light of the input of the victim, the background of this defendant, which I have been made aware of from Dr. Rotenberg's report, I believe this is an appropriate disposition for the Defendant. *We ask that you accept and adopt the plea agreement, Your Honor.*

*Id.* at 5. In my opinion, this excerpt leaves little room for debate. The prosecutor, in tone, tenor, and plain language recognized the non-binding nature of the sentence he was *recommending.* Thus, what the Commonwealth described as a "charging agreement" and "sentencing agreement" appears as an open plea with sentencing recommendation. The Commonwealth's discussion of the PSI report, its detailed recitation of the Guidelines sentencing ranges, and related scores, and its request that the trial judge "accept and adopt the plea agreement" two months after the court had accepted Parson's plea simply make no sense otherwise. Moreover, to the extent the Commonwealth was entitled to the benefit of any bargain, the prosecutor's own language establishes that it received that benefit in having avoided a trial and spared the victim the need to appear in court. Although the Commonwealth was quick to adjust its position when the trial judge elected not to impose jail time, *see id.* at 11, the fact remains that the Commonwealth's own presentation established a framework for the exercise of judicial discretion to accept or reject a *recommended* sentence. On this point our Supreme Court has provided precise direction which, given the Majority's determination to the contrary, bears repetition here:

In the process of negotiating a guilty plea, the prosecutor may make promises to the defendant, for instance recommending a maximum sentence for the crimes committed. Although the prosecutor is bound to act in accordance with those promises, this "in no way binds the presiding judge to the terms of the agreement." *Commonwealth v. Zuber,* 466 Pa. 453, 353 A.2d 441, 444, n. 4 (1976); *see also Commonwealth v. Wilkins,* 442 Pa. 524, 277 A.2d 341, 343 (1971) (noting that under a negotiated plea agreement, the defendant "knew that he could not count on the court being bound by the recommendation [of sentence]"). *In fact, the presiding judge can still sentence the defendant to any term allowed under the Sentencing Code, provided that the defendant has the chance to withdraw his guilty plea if the judge's sentence is not in accordance with his negotiated agreement.* Pa. R.Crim.P. 591(A).

*Commonwealth v. Wallace,* 582 Pa. 234, 870 A.2d 838, 843 n. 5 (2005) (emphasis added)[2]. Thus, the trial court did not err in imposing sentence based on standard sentencing factors notwithstanding the Commonwealth's belatedly revised "expectations." *See* Op. at 1269. Contrary to the Majority's conclusion, the trial judge did not unilaterally "alter" a binding plea agreement but exercised his discretion on the basis of an incoherent presentation by the Commonwealth. Accordingly, I find no error in the trial judge's ruling or the sentence he imposed.

¶ 5 Finally, I find it necessary to address the Majority's suggestion that, upon remand, "a viable alternative resolution of this case would be, as the Commonwealth requests, to vacate the judgment of sentence and remand for imposition of the sentence pursuant to the plea bargain." Op. at 1271. Such a resolution is dependant, of course, upon an interpretation of the record that I do not accept. To the extent that the Majority's decision will impose it, however, I find another alternative equally viable. The defendant may file a post sentence motion to withdraw guilty plea on the basis of the manifest injustice which, in my view is arguably present. If, at a hearing, the requisite threshold is met, the trial court may choose to grant such a motion and allow the defendant to go to trial at the conclusion of which, if the defendant is convicted, the trial judge will have full discretion in sentencing.

¶ 6 "A plea rises to the level of manifest injustice when it is entered into involuntarily, unknowingly, or unintelligently." *Commonwealth v. Pantalion,* 957 A.2d 1267, 1271 (Pa.Super.2008). As in all such matters, the trial court may find the plea infirm if the record of the guilty plea colloquy betrays an error in the information provided that is material to the defendant's decision to plead guilty. *See id.* at 1272; *see also Commonwealth v. Alston,* 387 Pa.Super. 393, 564 A.2d 235, 237 (1989). Of course not every mistake or inadequacy in the guilty plea colloquy is material to a defendant's decision to tender his plea; indeed, the bulk of our decisions on the subject indicates that most such errors are wholly immaterial. *See e.g., Commonwealth v. Yager,* 454 Pa.Super. 428, 685 A.2d 1000, 1005–06 (1996). This Court has acknowledged, however, that an error may be material if information provided by the judge prior to the defendant's entry of his plea impeded the defendant's ability to assess the length of the sentence to be imposed as a result of the plea. *See Alston,* 564 A.2d at 237. Accordingly, in *Alston,* we found the defendant's plea infirm and deemed manifest injustice shown where the trial judge informed the defendant that he would be subject to forty-eight hours minimum imprisonment when in fact, as a second-time offender, the defendant was subject to a minimum term of thirty days. *See id.* ("Because appellee was misinformed as to the potential sentence he would receive, we must conclude that his guilty plea was not knowingly and voluntarily tendered.").

¶ 7 In my view, this case raises a concern similar to that demonstrated in *Alston.* Although the trial court did not promise the defendant a shorter term than

---

2. Although the Majority attempts to dismiss *Wallace* as a case decided in the context of revocation of parole or probation, *see* Op. at 1270, n. 6, the Court's delineation of sentencing alternatives available to a trial court following entry of a negotiated plea is not limited to probation violators. By its own terms, the Court's discussion addresses entry of negotiated pleas pursuant to Pa.R.Crim.P. 591(A), a rule that has no application to probation revocation, but by its plain language governs the withdrawal of pleas of guilty or *nolo contendere* before sentencing.

allowed by law, he suggested an ability to impose a sentence other then the one agreed if he accepted the defendant's plea. After the judge explained the recommended term of incarceration to the defendant and obtained his assent that he understood and agreed to that term, the court followed immediately with a disclaimer:

> THE COURT: Do you understand that I was not involved in the negotiation of this plea agreement and that this is an agreement between you and your attorney and the Commonwealth through the Assistant District Attorney?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that I am not bound by the plea agreement? In other words, I do not have to follow it if I don't think it's appropriate?
>
> THE DEFENDANT: Yes.

N.T., Guilty Plea, 1/27/06, at 10.

¶ 8 Assuming, as the Majority holds, that the "agreement" in question was a fully negotiated binding plea agreement, the trial judge's suggestion to the defendant that he was not bound to impose the agreed sentence is simply erroneous. Although the judge was not bound to accept the defendant's plea, if he accepted it in the presence of a fully negotiated plea agreement, he was not then able to disavow the sentence and impose another. Given this "advice," I find it unsurprising that the defendant would appear in court for sentencing urging imposition of a lighter sentence. In its lack of complete clarity, the colloquy created a "perfect storm" of circumstances that effectively allowed the defendant to tender a plea of guilty and then appeal to the trial judge to exercise leniency. In my view, the fact that both the defendant and the trial court then acted accordingly, exercising prerogatives the Majority finds they did not have, raises a substantial question of the extent to which the defendant, having ostensibly relied on an incorrect recitation by the court, can be said to have acted in a fully voluntary fashion. Because I believe that this issue remains unresolved on the record before us, I would conclude that imposition of the "agreed" sentence is no more viable than the option of post sentence plea withdraw. I would conclude accordingly that should the Majority persist in vacating the judgment of sentence imposed, it must remand subject to the defendant's right to withdraw his plea and proceed to trial.

¶ 9 Because the Majority declines this course, I must respectfully dissent.