J-S11023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARK CAPLE | |
| Appellant | No. 1569 EDA 2015 |

Appeal from the Judgment of Sentence May 18, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0003148-2010
CP-46-CR-0007731-2014
CP-46-CR-0007738-2014

BEFORE:  FORD ELLIOTT, P.J.E., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                     **FILED MAY 10, 2016**

Mark Caple brings this appeal from the judgment of sentence imposed on May 18, 2015, in the Court of Common Pleas of Montgomery County. Pursuant to a plea agreement, Caple agreed to plead guilty to charges of terroristic threats[1] at Docket No. 7731-2014, and possession of a controlled substance[2] at Docket No. 7738-2014, admit to probation violations at Docket Nos. 3145-2010, 3146-2010, 3147-2010, and 3148-2010, and serve a six-to-23 month term of incarceration with five years' probation, dating from May 18, 2015.  The terms of the plea agreement were jointly recommended

_____

[1] 18 Pa.C.S. § 2706(a)(1).

[2] 35 P.S. § 780-113(a)(16).

to the trial court.[3] The trial court accepted Caple's pleas and stipulations to probation violations, and sentenced Caple to 2 to 5 years' incarceration plus three years' probation. Caple contends the trial court erred in failing to sentence him consistent with the terms of the plea agreement.[4] Based upon the following, we affirm.

Caple does not challenge any aspect of the sentence, nor the validity of the guilty plea.[5] Rather, Caple challenges the legality of the sentence, and presents the following question:[6]

> Whether the trial court erred in allowing [Caple] to be colloquied with regard to pleading guilty and thereafter accepting [Caple's] guilty plea and admissions to his probation violations based on the terms and conditions as announced in open court by the prosecutor and defense, but, subsequent thereto, sentencing

---

[3] As will be more fully discussed below, the crux of this appeal is the nature of the plea agreement. Caple contends there was an "agreed upon sentence" or a "negotiated sentence." Caple's Brief at 10–11. The Commonwealth states the terms of the plea agreement included a sentencing recommendation, not an agreed upon sentence. *See* Commonwealth's Brief at 8. The trial court refers to a "negotiated sentence." Trial Court Opinion, 6/30/2015, at 2. This appeal demonstrates how essential it is to clarify the nature of the plea agreement.

[4] We note, as did the trial judge, that Caple "has taken the instant appeal only as to the two new cases [Docket Nos. 7731-2014 and 7738-2014] and one of the cases in which he admitted to violating the terms of his sentence of probation [Docket No. 3148]." Trial Court Opinion, 6/30/2015, at 1.

[5] The record reflects Caple did not file a motion to withdraw his plea within 10 days of sentencing, or file a motion for reconsideration of sentence.

[6] Caple timely complied with the order of the trial court to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

[Caple] to a sentence that did not conform to the global negotiated guilty plea agreement as announced before [Caple] tendered his guilty plea and concomitant admission to probation violations.

Caple's Brief at 7.

Guilty pleas are governed by Pennsylvania Rule of Criminal Procedure 590, which provides, in pertinent part:

**(B) Plea Agreements**

(1) When counsel for both sides have arrived at a plea agreement, they shall state on the record in open court, in the presence of the defendant, the terms of the agreement, unless the judge orders, for good cause shown and with the consent of the defendant, counsel for the defendant, and the attorney for the Commonwealth, that specific conditions in the agreement be placed on the record *in camera* and the record sealed.

(2) The judge shall conduct a separate inquiry of the defendant on the record to determine whether the defendant understands and voluntarily accepts the terms of the plea agreement on which the guilty plea or plea of *nolo contendere* is based.

Pa.R.Crim.P. 590(B). Furthermore, this Court has explained that "Pennsylvania law allows a broad continuum in plea bargains." ***Commonwealth v. Parsons***, 969 A.2d 1259, 1267 (Pa. Super. 2009).

In an open plea agreement, there is an agreement as to the charges to be brought, but no agreement at all to restrict the prosecution's right to seek the maximum sentences applicable to those charges. At the other end of the negotiated plea agreement continuum, a plea agreement may specify not only the charges to be brought, **but also the specific penalties to be imposed**. In between these extremes there are various options, including an agreement to make no recommendation or … an agreement to make a favorable but non-binding recommendation. So long as the limits of the agreement are plainly **set forth** on the record, **understood** and **agreed to by**

- 3 -

> ***the parties***, and ***approved by the trial court***, we find no impediment in [Rule 590] to the offer, acceptance, performance or enforcement of such plea agreements.

***Id.*** at 1267 (citations omitted) (emphasis in original).

Here, we conclude Caple is not entitled to the relief he requests, namely, the sentence placed on the record by the prosecutor at the guilty plea hearing. Based upon the plain language of the plea colloquy, we find the plea agreement involved an "agreement to make a favorable but non-binding recommendation." ***Id.*** at 1267 (citations omitted).

Specifically, the written plea agreement contained the following question:

> Are you aware that the Judge does not have to sentence you to the term of probation or jail sentence upon which your attorney and Assistant District Attorney have agreed?

Caple's Guilty Plea Agreements, filed 5/18/2015, signed 5/12/2105, at 4, ¶24 (Docket Nos. 7731-2014, 7738-2014). Caple checked the "Yes" line, indicating he understood that particular provision of the plea agreement. Additionally, Caple initialed at the bottom of the page on which the question was found in the plea agreement and signed the plea agreement.

On May 18, 2015, Caple appeared with counsel at the guilty plea hearing, which began, as follows:

> [COMMONWEALTH ATTORNEY]: … In addition to the Gagnon files, which are indexed at 3145 of 2010, 3146 of 2010, 3147 of 2010 and 3148 of 2010, I believe the defendant is pleading guilty to two new files today.
>
> THE COURT: Okay.

[COMMONWEALTH ATTORNEY]: And those are indexed at 7731 of 2014 and 7738 of 2014.

[DEFENSE COUNSEL]: That is my understanding, Your Honor.

[COMMONWEALTH ATTORNEY]: On his new files, on 7738 of 2014, the defendant is pleading guilty to possession.

THE COURT: What's the count?

[COMMONWEALTH ATTORNEY]: Count is just Count 1, and the recommendation is one year probation and $300.00 fine and costs.

THE COURT: What's the drug?

[COMMONWEALTH ATTORNEY]: Marijuana, synthetic marijuana.

THE COURT: Okay.

[COMMONWEALTH ATTORNEY]: And on the other file, 7731 of 2014, defendant is pleading guilty to Count 1, terroristic threats, graded as a misdemeanor of the first degree. The recommendation is six to 23 months, plus three years consecutive probation. Defendant has to pay $1,000 in fines and costs, not to have any contact with the victim, and to go for a PPI evaluation and comply with the recommendation.

On his Gagnon files, on 3147 of 2010, defendant's five-year probation is to be revoked and reinstated. That's on Count 2.

3146 of 2010, Count 2, defendant is remanded to serve his back time, which is 18 months and six days, to date from October 27 of 2014.

…

[COMMONWEALTH ATTORNEY]: Eligible for re-parole after serving 12 months, and that is to be followed by a three-year consecutive probation.

THE COURT: Okay.

[COMMONWEALTH ATTORNEY]: That same sentence should be imposed on Count 2 of 3147 of 2010. That's on Count 2 of that file.

THE COURT: That's concurrent.

[COMMONWEALTH ATTORNEY]: Concurrent, correct, Your Honor.

And lastly, on 3148 of 2010, … the defendant is to undergo a five-year probation to date from today, and that is also to be concurrent with all the other sentences.

[DEFENSE COUNSEL]: That is my understanding, Your Honor.

THE COURT: That's pretty generous. I don't know if I'm going to accept it.

Let's have him come up here. We'll swear him in up here please.

N.T., 5/18/2015, at 2–4.

Caple was then sworn, was examined, and testified during the plea colloquy. The colloquy included the following exchange:

[DEFENSE COUNSEL]: **And you understand that you're pleading guilty to the terms that the district attorney placed on the record a few moments ago?**

[CAPLE]: Yes.

[DEFENSE COUNSEL]: Correct?

(Guilty plea colloquy marked Defendant's Exhibit D-1, for identification.)

[DEFENSE COUNSEL]: Your Honor, I've marked a document as D-1.

THE COURT: Okay.

[DEFENSE COUNSEL]:  May I approach?

THE COURT:  Yes.

BY [DEFENSE COUNSEL]:

Q.  Mr. Caple, do you recognize this document?

A.  Yes.

Q.  Did you and I go over this document last week?

A.  Yes.

Q.  **And did we go through each and every question of this document?**

A.  **Yes.**

Q.  And were your answers truthful?

A.  Yes.

Q.  And now that you're under oath, would they change?

A.  No.

Q.  Did you initial the bottom of each page?

A.  Yes.

Q.  And did you sign and date the last page?

A.  Yes.

[DEFENSE COUNSEL]:  With that, Your Honor, I would move for the admission of D-1.

THE COURT:  Any objections?

[COMMONWEALTH COUNSEL]:  No objection, Your Honor.

THE COURT:  D-1 is admitted.

>    (Defendant's Exhibit D-1, received in evidence.)

*Id.* at 6 (emphasis added).

The trial court, following the colloquy, admonished Caple for his probations violations and underlying charges, after the previous sentencing judge gave him the opportunity to avoid state prison. The trial judge told Caple:

> I read everything in here. This is just not about my stamping the paperwork of the probation officer and getting you on your way. I think county prison is just biding your time, until you hit the streets of Pottstown again, where you've been nothing less than a thug out there.
>
> Nothing is reaching you. You're getting high. I don't know what else to do with you. I don't think a county prison is going to help you at all.
>
> So I'm not asking you to say anything. You got to hear it from my point of view. I'm a fresh pair of eyes on this picture, which is not a bad thing, but at the end of the day, I've got to stop you, because you're just going to come back as far as I'm concerned. …

*Id.* at 16–17. The court reflected on the plea agreement:

> THE COURT: So I don't know what you thought today. You have a wonderful lawyer. She's trying to do damage control. Of course, she's going to grab this recommendation. I don't understand it, why the PO [Probation Officer] would do this, I really don't, and why the DA [District Attorney] is jumping on board with it, with a record like this, third violation, two new arrests. ….

*Id.* at 18–19. The Court later asked:

> THE COURT: … My question is, so the PO's recommendation is what's been stated by the DA?
>
> [DEFENSE COUNSEL]: Yes, Your Honor.

- 8 -

*Id.* at 21.

Thereafter, the judge stated on the record, "I'm going to have to take a few minutes to go over the numbers to get this right," and asked the court clerk "to come in with her" to "fashion a sentence." *Id.* at 22.

When the court reconvened, the court accepted Caple's guilty pleas for the new cases, Docket Nos. 7731-2014 and 7738-2014. In addition, the court accepted Caple's stipulations that he was in violation of probation and parole at Docket Nos. 3145-2010, 3146-2010, 3147-2010, and 3148-2010, and revoked his probation and parole on these dockets. *Id.* at 25. The court gave Caple the opportunity for allocution, and Caple addressed the court. The court then spoke to Caple, concluding:

> I'm hopeful this is going to be an opportunity for you to get your act together, because I don't think with this recommendation you were going to be able to do it. I don't. I just don't have that level of confidence in you to give you the opportunity for another county sentence.

*Id.* at 26. The trial judge then sentenced Caple to an aggregate term of two to five years' imprisonment. *Id.* at 26–28.

On this record, there is no basis upon which to disturb the sentence imposed by the trial court. When plea agreements are accompanied by a recommended sentence, the trial court is not bound to that recommendation and is free to not abide by the terms of the recommended sentence. *Commonwealth v. Wallace*, 870 A.2d 838, 843 n.5 (Pa. 2005) ("In the process of negotiating a guilty plea, the prosecutor may make promises to

the defendant, for instance recommending a maximum sentence for the crimes committed. Although the prosecutor is bound to act in accordance with those promises, this in no way binds the presiding judge to the terms of the agreement.") (quotations and citation omitted). Here, in light of Question #24 of the written plea agreement, it is clear the judge had the right to not impose the sentence that was jointly presented by Caple's counsel and the prosecutor. We also note that the judge fully explained her reasons for not doing so.

We are compelled to add, however, that Caple's argument that he is entitled to receive the sentence placed on the record at the outset of the guilty plea hearing is understandable. Following the presentation of the plea agreement, Caple was asked if he understood "that you're pleading guilty to the terms that the district attorney placed on the record a few moments ago," and Caple replied, "Yes." N.T., 5/18/2015, at 6. This question could be understood to imply that Caple was pleading guilty and admitting probation violations in exchange for a specific agreed-upon sentence that bound the court. Moreover, at the plea hearing, there was only a general reference to the written plea agreement, confirming that Caple had reviewed that agreement with his counsel, initialed each page, and signed it at the end.

In addition, the trial judge's language at sentencing was confusing. The trial judge stated with regard to the sentence for the case at Docket No.

7731-14, "I am not going to accept the agreement between the lawyers." *Id.* at 26. Then, with regard to the sentence for the case at Docket No. 7738-14, the judge stated that she "will accept the lawyer's recommendation, agreement …." *Id.* at 27. With regard to the sentence for the probation violation at Docket No. 3148-10, the judge indicated she would "keep that sentence, per the agreement, of five years' probation to date from today." *Id.* at 28. Even in the trial court's opinion, the trial judge refers to the plea agreement as a "negotiated sentence,"[7] and does not indicate that the sentence presented at the guilty plea hearing was a recommendation not binding upon the court.

Where, as here, the judge had decided not to follow the recommended sentence, this appeal may have been avoided if the trial judge had reiterated to Caple that she was not bound by the sentence "upon which your attorney and Assistant District Attorney have agreed." Caple's Plea Agreements, filed 5/18/2015, signed 5/12/2015, at 4, ¶24 (Docket Nos. 7731-2014, 7738-2014).

Judgment of sentence affirmed.

Judge Musmanno joins the memorandum.

President Judge Emeritus Ford Elliott concurs in the result.

_____

[7] Trial Court Opinion, 6/30/2015, at 2.

- 11 -

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/10/2016